**Walter L. GREEN, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11640.**

District of Columbia Court of Appeals.

Submitted May 26, 1977.

Decided Sept. 7, 1977.

Michael I. Gilbert, Washington, D.C., was on the brief for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, Whitney M. Adams and Mary Ellen Abrecht, Asst. U. S. Attys., Washington, D.C., were on the brief for appellee.

Before KERN, YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

This is an appeal from a refusal of the trial court to grant appellant's motion to withdraw his plea of guilty or, in the alternative, order the specific performance of a plea bargain agreement. We affirm.

By a written instrument referred to as a "Memorandum of Understanding," appellant entered into a plea bargain agreement with the government after he was charged with two counts of narcotics possession (D.C.Code 1973, § 33–402). Briefly stated, in exchange for entering a plea of guilty to the charges, appellant was permitted to enroll in the Superior Court sponsored Pretrial Narcotics Diversion Project.[1] The agreement provided that after six months of successful participation in the project, without having been rearrested, appellant could move to withdraw the guilty plea without government opposition. After ten months of successful participation by appellant and provided he had not been rearrested, the government would enter a *nolle prosequi* in the case. Furthermore, an additional document appended to the agreement as "Attachment A"[2] set forth the conditions which would lead to appellant's unfavorable termination from the program. One provision of "Attachment A" explained the consequences of a rearrest:

> An arrest in the District of Columbia for any U.S. or D.C. offense other than for disorderly conduct or a traffic violation shall result in a termination hearing being convened. Should the fact of a re-arrest in a jurisdiction other than the District of Columbia come to the attention of the Office of the U.S. Attorney, a termination hearing may also be convened. At such hearing, the facts and circumstances of the arrest shall be reviewed and considered by the representative of the Office of the U.S Attorney. If the Office makes an independent determination that probable cause did, in fact, exist at the time of the arrest and provided the decision is made to paper the case, the participant in question will be unfavorably terminated from the Project.

On November 12, 1975, the trial court was informed of the terms of the agreement and, after questioning appellant as to the voluntariness of his decision to plead guilty as well as establishing a factual basis for the charges, agreed to accept the plea. The court then postponed sentencing for ten months.

Five months later, however, appellant was arrested and subsequently indicted in Alexandria, Virginia, on charges of grand larceny, burglary, and unauthorized use of a motor vehicle.[3] On October 6, 1976, he was tried and found not guilty by reason of insanity. Shortly thereafter he was released from the custody of a mental institution where he had been confined by the Virginia authorities.

On October 27, 1976 appellant, represented by counsel, appeared at a hearing before an Assistant United States Attorney and representatives of the Narcotics Diversion Project for the purpose of determining whether he should be terminated from the project because of the Virginia arrest. When questioned, appellant stated that he had been using marijuana on the day of the incident and was unable to recall or explain the circumstances surrounding his exact involvement. At the conclusion of the hearing the prosecutor over the objection of the project representatives,[4] terminated appellant from the program.

1. This program is designed to divert drug abusers out of the criminal justice system by offering them an intensive program of narcotics treatment, counseling, and supportive services. It is available to selected individuals who have been charged with any drug offense other than possession of a small amount of marijuana and who have never been convicted of a felony. All participants must be approved by both a project representative and the United States Attorney.

2. "Attachment A" is a Memorandum of Understanding between the Director of the Narcotics Pretrial Diversion Project and the United States Attorney's Office establishing the grounds for a project participant's unfavorable termination. A copy of the memorandum is furnished to every participant and its terms are incorporated into the agreement as a whole.

3. *See* Va.Code 1950, §§ 18.2–95, –89, –102, respectively.

4. In its brief, the government concedes that the plea agreement provided that appellant was not to be terminated from the program solely for returning to drug use except on the recommendation of the project director.

On November 23, 1976, the trial court denied appellant's motion to withdraw the guilty plea or, in the alternative, order the specific performance of the agreement. Appellant was then placed on two years' probation.[5]

Appellant argued below, and now on appeal, that the government breached the agreement and therefore the requested relief is warranted. He specifically bases this claim on the ground that his acquittal of the Virginia charges precludes a government finding that there was probable cause for the arrest. The government contends that it was appellant who failed to perform his side of the bargain. Furthermore, the government questions whether the trial court possessed the authority to order the specific performance of the agreement.

■ It is well settled that "[t]he disposition of criminal charges by agreement between the prosecutor and the accused, [with the concurrence of the court] . . . is an essential component of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). While courts are reluctant to impose binding contract principles on this plea bargaining process, *United States ex rel. Selikoff v. Commissioner of Corrections*, 524 F.2d 650, 654 (2d Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976), they "will specifically enforce agreements made by the government . . . ." *Braxton v. United States*, D.C.App., 328 A.2d 385, 386 (1974). The reasons for this are obvious. In order to maintain the integrity of their office, prosecutors must be held to "meticulous standards of both promise and performance . . . ." *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973); *see also Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286, 296 (2d Cir. 1976), *cert. dismissed*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). Moreover, the fundamental principles of fairness accompanied by "the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello v. New York, supra*, 404 U.S. at 262, 92 S.Ct. at 499. It follows, therefore, that a defendant must be afforded appropriate relief when the government fails to fulfill its promise. *Palermo v. Warden, supra; United States v. Brown*, 500 F.2d 375 (4th Cir. 1974).

In *Santobello v. New York, supra*, the Supreme Court left the determination of the exact form of the relief to the discretion of the trial court. However, it did recommend specific performance and withdrawal of the guilty plea as possible remedies. A review of several circuit decisions reveals that,· under appropriate circumstances, courts have not been reluctant to order either remedy. For instance, specific performance was mandated in *Palermo v. Warden, supra; Harris v. Superintendent, Virginia State Penitentiary*, 518 F.2d 1173 (4th Cir. 1975); and *Correale v. United States, supra*, while vacatur of the guilty plea was ordered in *United States v. I. H. Hammerman II*, 528 F.2d 326 (4th Cir. 1975).

■ In holding that the trial court in the instant case possessed the authority to order the relief which appellant requests, we fully recognize the essential need for both the court and the government to coordinate their individual roles in the plea bargaining process. *See Scott v. United States*, 135 U.S.App.D.C. 377, 419 F.2d 264 (1969). A plea agreement satisfactorily agreed upon by both the government and a defendant which adheres to the balancing ends of justice, should be followed in the majority of cases. *United States v. Ammidown*, 162 U.S.App.D.C. 28, 34, 497 F.2d 615, 621 (1973). However, *Santobello* dictates that once the court has sanctioned the agreement by accepting the plea, it has the authority to insure the terms are carried out.

■ We turn now to the issue of whether appellant is entitled to the relief he has requested. Accordingly, our decision must necessarily rest upon a determination of

---

5. *See* 18 U.S.C. § 5010(a) (1970).

whether the government, in fact, breached its part of the agreement. We believe it did not.

We are especially persuaded in our decision by that portion of the agreement (Attachment A) which explained that appellant would be terminated from the program if he was rearrested and if the prosecutor, after a hearing, determined that there was probable cause for the arrest. Appellant fully understood this condition and agreed to it. Thus as a consequence of his arrest and indictment on the Virginia charges, appellant received exactly what he bargained for. The fact that he was acquitted by reason of insanity has no bearing on the terms of the instant agreement.[6]

*Affirmed.*

---

**6.** We are not persuaded by appellant's contention that the prosecutor breached the spirit of the agreement by determining there was probable cause for the Virginia arrest, in spite of appellant's successful insanity defense. In *Knight v. Estelle*, 501 F.2d 963 (5th Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 668 (1975), the defendant, while on parole, committed a criminal act but was found not guilty by reason of insanity. The court affirmed the parole board's decision to revoke the defendant's parole by stating that "the same act at variance with the law may, for a variety of reasons, be the occasion of both a successful criminal defense and a parole revocation." *Id.* at 964–65 (footnote omitted); *see also State ex rel. Florida Parole & Probation Comm'n v. Helton*, Fla.App., 313 So.2d 413 (1975) (the fact that a jury acquits a defendant has no bearing on a decision to revoke parole). The same rationale appears to us to be applicable here.