601 P.2d 314

**The STATE of Arizona, Appellee,**

v.

**Bernard A. ROSENBAUM, Appellant.**

**No. 2 CA–CR 1699.**

Court of Appeals of Arizona, Division 2.

Aug. 2, 1979.

Rehearing Denied Sept. 12, 1979.

Review Denied Oct. 10, 1979.

Stephen D. Neely, Pima County Atty. by Alan Davidon, Deputy County Atty., Tucson, for appellee.

Jack J. Rappeport, Tucson, for appellant.

OPINION

HATHAWAY, Judge.

Appellant was indicted for obtaining money by fraudulent scheme or artifice, A.R.S. Sec. 13–320.01, and second-degree conspiracy to obtain money by false or fraudulent representations, A.R.S. Sec. 13–331(B), as amended.

On August 23, 1978, appellant agreed to plead guilty to a charge of obtaining money, property, or valuable consideration by false pretense, A.R.S. Sec. 13–312, an open ended offense, treatable as a misdemeanor or a felony. The agreement provided that the original charges in the indictment would be dismissed as to appellant upon acceptance of his guilty plea by the court, and also specified that no further charges relating to the questioned activities would be prosecuted against appellant. It further provided that, "the Pima County Attorney's office will stand mute with the sentencing court and will not interfere in any manner with said court's sentencing discretion."

The factual basis for the guilty plea read into the record provided:

"During January, 1977 the officers and directors of the Solot Company negotiated with the Valley National Bank in an effort to borrow $390,000 on behalf of the Solot Company; on or about February 9, 1977, Bernard Rosenbaum submitted a financial statement to the Valley National Bank in support of the company's application for a loan; the financial statement contained material omissions of fact, including but not limited to Mr.

Rosenbaum's omission of personal debts amounting to approximately $250,000; the Valley National Bank ultimately loaned $250,000 to the Solot Company."

After the presentence report was prepared and submitted, the deputy county attorney wrote to defense counsel expressing concern for the factual basis of the guilty plea in view of the following statement contained in the presentence report:

"The defendant stated that he is suffering from amnesia and cannot remember events (including the instant offense) as far back as 10 years."

Appellant testified and expressed bewilderment and inability to determine whether critical signatures were his. However, he reaffirmed his guilty plea, the matter was set down for sentencing, and on November 8, 1978, the court entered the following judgment and sentence:

"IT IS THE FURTHER JUDGMENT AND SENTENCE OF THE COURT that the imposition of sentence be suspended and the defendant be placed on probation for a period of five (5) years, commencing this date under the following terms and conditions:

1. That he serve one (1) year in the Pima County Jail.

2. That during that year, on Monday through Friday, he is to be released from the jail at 7:30 a.m. and returned at 5:30 p.m., for purposes of performing community service work at Kino Community Hospital. THE COURT RECOMMENDS that the defendant be at the Annex because of his health. IT IS FURTHER ORDERED that if any duties are to be performed by the defendant while at the annex, that only light duties be performed.

3. The defendant is ordered to make restitution in this matter."

Pursuant to Rule 24.2(a)(2), Rules of Criminal Procedure, appellant moved for modification of the sentence on the basis of newly discovered evidence, namely that he discovered that the probation officer had not interviewed the key medical witnesses. The state filed written opposition to the motion for modification of sentence and appeared at the hearing on the motion and argued against it. The motion was heard and denied on November 29, 1978, at which time appellant filed a motion for withdrawal of guilty plea, which was then argued by counsel. The basis for the motion was that the county attorney had violated the plea agreement and had not stood mute with the sentencing court as undertaken in that agreement, and "vigorously interfered with the court's sentencing discretion." The motion was denied and this appeal follows, challenging the sentence as excessive and contending that the trial court abused its discretion in not granting appellant's motion to withdraw his plea agreement. We will consider the questions in reverse order.

■ Appellant contends that the state violated its promise to stand mute with the sentencing court and not interfere with the court's sentencing discretion. Both parties agree that the state is duty bound to carry out its promises under the plea agreement. *Santobello v. N.Y.,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The question is whether the prosecutor stood mute with the sentencing court and refrained from interfering with that court's sentencing discretion. If the prosecution does not fulfill its promises under the agreement, appellant is entitled to appropriate relief. *Green v. United States,* 377 A.2d 1132 (D.C.App. 1977). We construe the prosecution promise to stand mute with the sentencing court and not interfere with the court's discretion as a promise to make no recommendation as to sentencing i. e., a commitment to make no damaging statement at that time. *Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974). The terms of plea agreements must be meticulously adhered to, and appellant's reasonable expectations under the agreement should be accorded deference. *State v. Brockington,* 140 N.J.Super. 422, 356 A.2d 430, cert. den. 429 U.S. 940, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976).

■ Appellant first complains about a statement made by the prosecutor that appellant had previously embezzled money but

had not been prosecuted. This statement was made during a conference requested by the court in an effort to obtain factual background on the case. We find no violation of the plea agreement by the state in attending and participating in the conference requested by the court and held without objection from appellant's counsel.

■ Appellant next contends that the state breached its agreement when motions were filed and argued in opposition to appellant's motion for modification of sentence.[1] The state argued that procedural requirements had not been met and questioned whether the court had jurisdiction to hear the appellant's motion. Sentence had already been imposed at the time of the state's opposition to the motion for modification. At no time prior to, during or after sentencing have we found where the state commented upon whether the crime should be treated as a felony or recommended any particular term of imprisonment or condition or probation. We find no breach by the state of its agreement in its effort to uphold the judgment of the court, that judgment having been imposed without recommendation from the prosecution.

■ We next consider appellant's challenge that the sentence is excessive and find that it is not. In particular, appellant contends that the court should not have imposed incarceration in the Pima County Jail for one year as a condition of probation "because the overwhelming medical evidence showed that such incarceration posed a serious threat to appellant's life" in view of his serious heart condition and constituted excessive punishment. The record reflects that prior to sentencing, upon recommendation of Mr. Yost of the probation department, the court ordered a medical evaluation of appellant's heart condition and psychiatric evaluation of his psychologically induced amnesia. The medical report submitted in response to the court order, included the following:

"Mr. Rosenbaum presented himself for medical evaluation last week, and I gather that the problem in question is whether he is physically able to sustain incarceration.

\*   \*   \*   \*   \*   \*

At the time of this examination, Mr. Rosenbaum denies any symptoms of angina pectoris. He carries on moderate to vigorous exertion with prolonged walking and normal household activities with no symptoms of any kind referable to the cardiovascular system. There is nothing to suggest congestive heart failure.

\*   \*   \*   \*   \*   \*

To summarize in simple language, Mr. Rosenbaum does have severe coronary artery disease, but at this time, is in what is called a Functional Grade II. This means that he must avoid very strenuous levels of activity but can carry on sedentary to light activity without difficulty. In other words, the normal activities of living, caring for himself and possibly functioning at some office or clerical kind of work are well within his capabilities. Anybody with this degree of coronary artery disease faces substantial risk, i. e., 11% per annum, of dying of the disease.

If, in a prison environment, Mr. Rosenbaum can live within the limits of light to sedentary activity, without forced strenuous activity, he should be able to manage about as well as in any other environment."

The medical report was over the signature of Brendan Phibbs, M.D., Chief of Medicine, Director of Cardiology, Kino Community Hospital.

The psychiatric report, submitted by Gershon Silber, M.D., psychiatrist for Kino Community Hospital, stated:

"Mr. Bernard Rosenbaum was examined by me in Psychiatry Clinic at Kino Community Hospital on October 11, 1978. I am told that he is facing sentencing on criminal charges. The question has been

---

1. The letter offering the plea agreement reserved to the county attorney the right to oppose any motion to withdraw the guilty plea in the event appellant was displeased with the court's disposition of the case.

posed to me: Is there a psychiatric illness that would be a contraindication to imprisonment?

Mr. Rosenbaum tells me he has no history of psychiatric treatment. My interview with him revealed no evidence of serious mental problems at this time. Therefore, in my opinion, he is able, from a psychiatric standpoint, to go to jail."

The court was fully aware of appellant's severe coronary disease and expressed great concern about it. The court's concern was such that the community services required of appellant as a condition of probation were clerical work at the hospital so that if medical problems arose appellant would be at the hospital for immediate treatment. The court also left open the possibility of modifying the requirement that appellant fulfill the year, provided appellant performed excellently. The court further protected appellant by providing that if duties are required of him while at the county jail annex, the duties are to be light. The court indicated that the conditions imposed should demonstrate that one could not engage in activities of the type involved and get off "scot-free." We find that the court conscientiously considered the nature of the crime, appellant's age and condition, and tailored the judgment to the overall situation. We do not find an abuse of the court's discretion in not being persuaded to modify the sentence on the basis of the opinion of appellant's experts. The judgment imposed is within the statutory limits and we find that the trial court exercised a reasonable discretion in imposing the conditions delineated.

The judgment is affirmed.

RICHMOND, C. J., and HOWARD, J., concurring.