**Warren C. WOOD, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 91–CM–518.

District of Columbia Court of Appeals.

Argued Jan. 6, 1993.
Decided March 26, 1993.

Keith Winston Watters, Washington, DC, for appellant.

James M. Silver, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Cathleen M. Corken, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY, KING and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant was convicted by a jury of simple assault in violation of D.C. Code § 22–504 (1989). On appeal, appellant contends that the trial court erred in ruling that the government acted lawfully in terminating him from the United States Attorney's pretrial diversion program [1] and that the court erred in ruling that the government acted lawfully in declining to readmit him. We affirm.

### I.

The government's evidence showed that on April 12, 1990, at 12:30 p.m., Arlo H. Darby, a truck checker employed at a construction site at First and G Streets, Northeast, stepped out onto First Street to stop the traffic in order to permit a truck to leave. As he was stopping the traffic, Darby saw the rear end of a car passing by and tapped it once with his traffic flag. The car continued past Darby and then stopped. Appellant, the driver of the car, got out and ran back toward Darby. Just before reaching Darby, appellant said, "If you weren't so old I'd hit you." Appellant then pushed Darby violently with both hands, causing him to fall to the ground. As Darby tried to catch himself with his left hand, he injured his left wrist. Appellant then ran back to his car and drove away. There were several witnesses to the incident, one of whom arranged for Darby to be taken to the hospital for treatment.

Darby's son, an attorney, subsequently filed a police report, and on June 16, 1990, a detective interviewed appellant at his home. Although appellant initially denied any knowledge of the incident, he ultimately admitted that he recalled it.[2] Appellant was charged with one count of simple assault on June 21, 1990.

On July 13, 1990, appellant applied for admission into the pretrial diversion program. Following an interview, he was admitted into the program on July 26, 1990, at which time he signed a Pretrial Diversion Agreement ("Agreement"), stating in relevant part:

If the United States Attorney determines a) that you made any false statement in your application for admission to diversion or in your eligibility interview, or b) that you violated any condition of the Agreement, the United States Attorney may modify the conditions or terminate you from the [p]rogram and proceed with or reinstitute the prosecution.

The United States Attorney's Office determined thereafter that appellant had made a false statement in connection with his application for diversion. Consequently, the government decided to terminate appellant from the diversion program in accordance with section (a) of the termination provision of the Agreement; on August 6, 1990, the government communicated its decision to appellant's attorney. The government reiterated its decision to appellant's attorney at a status hearing on Au-

---

1. *Fedorov v. United States*, 600 A.2d 370, 372 n. 3 (D.C.1991) (en banc) explains the United States Attorney's pretrial diversion program. The program is designed to divert from the trial process first-time offenders accused of a misdemeanor or an offense not involving the use of force or violence. In general, persons without significant prior arrest records are eligible to participate. Persons who are accepted may be required to do at least forty hours of community service and, perhaps, to provide restitution. In exchange, the prosecutor enters a *nolle prosequi* instead of bringing such a person to trial. Therefore, if the offender successfully completes the program without committing any offense during the diversion period, that offender avoids the stigma of a criminal conviction. *Id.* (citations omitted).

2. Appellant testified to a different version of the facts; the defense put on three character witnesses who testified about appellant's reputation for truthfulness.

gust 8, 1990, at which time an Assistant United States Attorney also discussed with appellant's counsel the possibility of appellant's readmission into the program and the possibility of a restitution agreement between appellant and Darby.

On August 14, 1990, appellant sought to be readmitted into the diversion program. As part of that effort, appellant and his counsel met with Kenneth W. Cowgill, Chief of the Misdemeanor Trial Section, United States Attorney's Office, to discuss the possibility of appellant's readmission, including the possibility of a restitution agreement. The government made clear at that time, however, that the false statement issue had still not been resolved. That was the last occasion during which the government discussed a possible restitution agreement with appellant. During that discussion, appellant's counsel asked the government to identify the specific false statement at issue, but the government declined to do so.

Appellant's counsel subsequently wrote a letter dated October 1, 1990, to Mr. Cowgill regarding appellant's termination. The letter stated in relevant part: "I would very much appreciate it if you would reconsider your position an [sic] allow us the opportunity to refute the alleged false statement made by my client during either of the two diversion conferences." In a letter dated October 10, 1990, Mr. Cowgill responded that the decision to terminate appellant based on a false statement was "made within a few days of execution" of the Agreement and that the termination decision had been communicated to appellant's counsel before appellant was given a community service assignment. Mr. Cowgill concluded the letter by stating that appellant would not be readmitted to diversion.

On October 12, 1990, appellant filed a motion to dismiss the criminal charges against him, or, in the alternative, to reinstate him into the diversion program. The trial court heard oral argument on the motion and then took it under advisement until after the close of evidence at trial. The court denied appellant's motion on February 27, 1991. Thereafter, appellant was tried and convicted before a jury; the trial court imposed a fine and a term of probation. This appeal followed.

## II.

■ The government has broad discretion in deciding whether to prosecute an accused. *Fedorov, supra* note 1, 600 A.2d at 376. " '[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute ... generally rests *entirely* in his [or her] discretion.' " *Id.* (emphasis added) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). Courts properly hesitate to examine the government's decision to prosecute because "that decision 'is particularly ill-suited to judicial review.' " *Id.* (quoting *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985)). "Such factors as the strength of the case, the prosecution's general deterrence value, the [g]overnment's enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.*

■ Pretrial diversion is a program initiated by the United States Attorney's office which " 'owes its existence and operation solely to prosecutorial discretion.' " *Irby v. United States,* 464 A.2d 136, 141 (D.C.1983) (quoting *United States v. Smith,* 354 A.2d 510, 512 (D.C.1976)). Whether to place an individual in the diversion program, therefore, rests in the broad discretion of the prosecutor. *See Baxter v. United States,* 483 A.2d 1170, 1171–72 (D.C.1984). This court generally has "reject[ed] challenges to a prosecutor's refusal to admit a defendant to a pretrial diversion program." *Id.* Similarly, we have generally seen "no reason to treat a person's termination from [diversion] any differently from a refusal to admit the person to the program in the first place." *Id.* at 1172. Absent compelling circumstances, therefore, courts should not review the government's diversion decision regarding a par-

ticular defendant. *Chavez v. United States,* 499 A.2d 813, 814 (D.C.1985).

## III.

 Appellant relies on *Green v. United States,* 377 A.2d 1132 (D.C.1977), as controlling authority for his argument that the language of the Agreement should be read to permit termination only if the government were able to prove to the satisfaction of a court, after a full evidentiary hearing, that appellant had made a false statement. In *Green,* this court held that the government did not breach its part of a plea bargaining agreement by terminating defendant from the program after a hearing. *Id.* at 1134–35. Appellant fails to note, however, that in *Green,* the agreement specifically provided for a hearing, not to mention that *the hearing provided for was an internal hearing by the government.* '*Id.* at 1133. In the present case, the unambiguous language of the Agreement provided that the government could terminate appellant from diversion "[*i* ]*f the [government ] determine*[*d* ] . . . that [appellant had] made any *false statement* in [his] application for admission to diversion or in [his] eligibility interview." (Emphases added.) There is no mention whatsoever in the Agreement of any entitlement to a hearing. Therefore, we find no error in the trial court's ruling that the government's obligations were satisfactorily discharged when defendant was furnished with the general explanation that he was terminated from diversion because of a false statement in connection with his application for diversion.[3]

## IV.

 While the discretion conferred upon the government in the diversion context is broad, " 'it is not unfettered. Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints.' " *Fe-*

*dorov, supra* note 1, 600 A.2d at 376 (citations omitted). The government's decision to terminate someone who has violated the terms of a diversion agreement, like an initial decision to refuse to grant diversion, is subject to judicial review for conformity with equal protection principles. *Id.* "The decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Id.* (citations omitted). In the present case, however, appellant did not allege an equal protection violation. Therefore, the trial court correctly found that the exercise of prosecutorial discretion which resulted in the termination of the Agreement in this case was not subject to judicial review for inconsistency with the Equal Protection Clause.

Appellant argues that the government incorrectly focuses on the Equal Protection Clause as the only possible basis for reviewability of the termination of his diversion on constitutional grounds. He asks this court to review the decision to terminate his diversion under the Due Process Clause instead. He contends that even if the government could lawfully have terminated him under the terms of the Agreement, its decision to do so in this case was arbitrary and capricious or otherwise unfair and, therefore, constituted a procedural due process violation. According to appellant's procedural due process theory, he should have been afforded a hearing before a neutral factfinder before the prosecutor terminated him from diversion.

Appellant notes that the Supreme Court has determined that the potential termination of the conditional liberty of a parolee would inflict a sufficiently "grievous loss" on the parolee and society so as to invoke the procedural protection of the Fourteenth Amendment and require an informal hearing to verify the facts before parole could be revoked. *Morrissey v.*

---

**3.** Although appellant was never informed of the exact false statement, we find no error in the trial court's ruling that requiring "the [g]overnment to identify the false [statement] or to furnish defendant an opportunity to refute [the statement], would unnecessarily enlarge the [g]overnment's obligation and would impose a new and unwarranted tier of administrative proceedings on the prosecutor in an area where the executive's prerogative is strongest." *See United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974); *Community for Creative Non–Violence v. Pierce,* 252 U.S.App.D.C. 37, 39, 786 F.2d 1199, 1201 (1986).

*Brewer,* 408 U.S. 471, 482–84, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972). The Supreme Court has also held that probation revocation, as with parole revocation, results in a loss of liberty and is entitled to procedural due process protection. *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973).

■ Appellant now asks this court to decide that there is enough flexibility in the Due Process Clause to encompass termination from diversion as well. We caution, however, that "[t]o say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships." *Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S.Ct. at 2600. Rather, determining appellant's entitlement to procedural due process in this diversion case involves a two-step analysis. First, appellant must establish a cognizable liberty interest in diversion within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 569–72, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). Once appellant has established a legitimate claim of entitlement, the sufficiency of the procedure for a hearing is determined by balancing the public and individual interests involved. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *see also Roth, supra,* 408 U.S. at 574–75, 92 S.Ct. at 2708.

■ We must, therefore, consider whether or not termination of diversion involves deprivation of a constitutionally protected liberty interest of a comparable nature to the liberty interest involved in either parole or probation. The liberty of a parolee, who has already stood trial, been sentenced, and served time in prison, "in-

cludes many of the core values of unqualified liberty and its termination [means incarceration, which] inflicts a 'grievous loss' on the parolee and often on others." *Morrissey v. Brewer, supra,* 408 U.S. at 482, 92 S.Ct. at 2601. Revocation of probation of a person, who also has stood trial and been sentenced, involves essentially the same loss of constitutionally protected liberty. *See Gagnon v. Scarpelli, supra,* 411 U.S. at 782, 93 S.Ct. at 1759. In contrast, when diversion is terminated pursuant to the patent terms of an agreement,[4] the divertee is simply returned to participation in the criminal process to stand trial instead of performing community service and possibly providing restitution. In our view, it cannot be said that a divertee who is terminated in strict compliance with such an agreement suffers a loss of liberty that rises to a constitutional level requiring procedural due process.[5]

## V.

■ We are also unpersuaded by appellant's claim that the government agreed to readmit him to diversion but then reneged on the agreement in violation of his constitutional rights. Notwithstanding appellant's present contention, his statements after his termination from the program clearly acknowledged that he had only the *possibility* of being readmitted to the diversion program, not that he had reached an agreement with the government to be readmitted. It is undisputed that the government discussed the possibility of appellant being admitted to diversion a second time at both the August 8, 1990, hearing and at a subsequent meeting between appellant and the government. Nonetheless, the record refutes rather than supports

4. We note here that *Fedorov, supra* note 1, 600 A.2d 370, is not analogous to this case, since *Fedorov* did not involve an agreement.

5. Appellant's additional argument that the government is estopped from asserting the false statement at issue as a basis for his termination, because the government was aware that his statement was inconsistent with the complaining witness's statement when it admitted him into diversion, lacks merit. Even assuming that appellant's factual claim is true, which the gov-

ernment maintains it is not, there is a considerable difference between being aware that two statements are inconsistent and determining that one of the two statements is false. Moreover, it is well settled that estoppel *does not run* against the government on the same terms as it does against any other litigant. *Heckler v. Community Health Servs.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (citing *INS v. Hibi,* 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973) (per curiam)).

appellant's claim that an agreement was reached. There is no record of the conversation between appellant and the government at the August 8, 1990, hearing. As to the subsequent meeting, as the trial court noted, "no closely contemporaneous document records the purpose or result of [appellant's] encounter with the prosecutor."

Moreover, in an affidavit, appellant states that the Assistant United States Attorney told him that he "might be readmitted into diversion if [he] paid $10,000.00 in restitution to the complaining witness." In his October 1, 1990, letter to the government, appellant's counsel writes that the United States Attorney's staff previously stated "that Mr. Wood may be reinstated if a restitution agreement was reached" with the victim. Appellant's counsel also stated at the November 7, 1990, hearing in this matter that the Assistant United States Attorney told him that appellant would "probably get re-entered—reinstated if he makes an agreement of restitution."

On the basis of this record, we cannot say that the trial court erred by characterizing the conversations between appellant and the government about appellant's readmission to diversion as "preliminaries that may have led to reinstatement in diversion."

For the foregoing reasons, the judgment on appeal herein is

***Affirmed.***