Daniel W. BRAWNER, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CM–753.

District of Columbia Court of Appeals.

Argued Jan. 21, 2000.

Decided Feb. 17, 2000.

Stephen Lee Shelnutt, Arlington, VA, with whom Charles Russell Twist was on the brief, for appellant.

Alyse Graham, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Ann K.H. Simon, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN and REID, Associate Judges, and PRYOR, Senior Judge.

REID, Associate Judge:

In this case, appellant Daniel W. Brawner, raises constitutional arguments against the deferred sentencing agreement which he executed with the United States Attorneys office. The agreement deferred sentencing in connection with his plea of guilty to a charge of assault of Revondra Payne,[1] in violation of D.C.Code § 22–504 (1996). It also granted to the United States the exclusive right to determine whether Brawner violated any condition of the agreement and, in case of violation, to seek sentencing immediately. After the United States terminated the agreement, the trial court sentenced Brawner, in part, to 180 days of incarceration, 90 days suspended, and one year of probation. Brawner asserts on appeal that the deferred sentencing agreement violates the constitutional separation of powers principle and the Due Process Clause of the Fifth Amendment to the Constitution of the United States. We affirm, applying the plain error standard of review.

## FACTUAL SUMMARY

The record before us reveals that Brawner was arrested on April 14, 1997, for assaulting his girlfriend, Ms. Payne. He entered a plea of not guilty on April 21, 1997. Trial was set for September 12, 1997. On that day, he and his attorney signed a deferred sentencing agreement ("the sentencing agreement" or "the agreement") with the United States which was discussed at a hearing before he changed his plea to guilty.

At the September hearing the trial judge, the Honorable Stephen G. Milliken, reviewed the provisions of the sentencing agreement with Brawner after he answered, "[y]es I have," to the trial court's question: "Have you read every word of this agreement?" Specifically, the trial judge reviewed the four conditions set forth in the agreement, informing Brawner that:

1. Ms. Payne's name also appears in the record as "Ravon Drey" and "Revan Drey Payne."

You must not violate any law or any [c]ourt [o]rder. If you are arrested, you have to tell the Court. You must refrain from engaging in any assault [or] threatening behavior against Ravon Drey (sic) .... You must enroll in and successfully complete the domestic violence intervention program.

The trial judge also made certain that Brawner, who was thirty-four years old at the time, was born in the United States, and had completed two years of college, understood the sentence in the agreement which read: "The determination of whether the defendant has violated any of the above conditions rests exclusively with the United States." Brawner declared that he understood the provision, but still wished to enter a guilty plea and defer sentencing. His counsel raised no objection.

After explaining to Brawner his right to proceed to trial, the process for trial and appeal, and what would happen if he violated the sentencing agreement, the trial judge asked the prosecutor to describe the evidence against Brawner on the assault charge. The prosecutor indicated that Brawner argued with Ms. Payne on April 14, 1997, and intentionally "struck her in the face and grabbed her around the neck. And her neck was broken during this incident."[2] Brawner agreed that the prosecutor's account of the events was true, and entered his guilty plea. Sentencing was scheduled for June 10, 1998.

In March 1998, the government gave notice of its intention to seek sentencing of Brawner on the April 1997 assault charge because he violated the conditions of his sentencing agreement by punching Ms. Payne in her face with his fist on January 19, 1998, leaving her with a swollen left eye. Brawner again was arrested and charged with assault for this incident. Although Brawner sought to postpone sentencing on the first assault on the ground that "there was no basis for the second

charge of assault," the sentencing judge, the Honorable Eric T. Washington, declined to put off the sentencing. He stated:

As it was explained to ... the defendant and as it's the Court's understanding, once the defendant agrees to this deferred sentencing plan, he agrees basically to be subject to the Government's recall of that plan at any time, for any reason, without having the Government have to go to any proof that in fact the reasons other than their assertion that he violated the terms of the deferred agreement are applicable.

When the trial judge denied the request for a continuance, defense counsel noted an objection. Counsel neither challenged the deferred sentencing agreement which he and Brawner signed, nor mentioned the constitutional principle of separation of powers. Nor did he raise a due process objection. In addition, Brawner made no effort to withdraw his guilty plea. The government emphasized that Brawner had entered a guilty plea to the first assault and that Ms. Payne's injuries had been severe. Brawner's counsel retorted: "[T]he government has not met its burden for any sentence in this case." Furthermore, counsel stated: "I object and my allocution is that the Government has submitted no competent and/or relevant evidence to support its position on allocution." The trial court reiterated the government's arguments concerning Brawner's guilty plea and the severity of Ms. Payne's injuries, and also noted that the government did not rely on the second assault as a basis for sentencing on the first assault. In addition, the trial court declared that in requesting sentencing on the first assault, "[t]he Government has submitted [a] verified pleading in which they make the allegation in fact that there has been reassaultive behavior by the defendant against the complaining witness in this particular case.

**2.** During the May 5, 1998 sentencing of Brawner on the assault charge after he violated the deferred sentencing agreement, the prosecutor did not mention a broken neck, but stated that Ms. Payne's jaw was fractured.

And that in fact that is the basis for which they have asked this Court to move to sentencing."

In sentencing Brawner, the trial court gave "credit" to him "for accepting early ... responsibilit[y]" for his actions. The court also "suspend[ed] execution of all but 90 days [of Brawner's 180 day sentence]," gave him one year's probation, and ordered him to complete forty hours of community service.

## ANALYSIS

On appeal, Brawner argues that the trial court made an unconstitutional delegation to the executive branch of government, through the United States Attorneys office, of its authority to determine whether he violated the deferred sentencing agreement. In essence, he argues that the United States Attorneys office infringed on the constitutional principle of separation of powers by usurping the power of a court, established by Congress under Article I of the Constitution of the United States, to make factual findings as to whether the deferred sentencing agreement was violated. Moreover, he asserts that the trial court could not "defer its adjudicative powers to the Executive Branch." The government contends that the trial court did not commit plain error when it proceeded to sentence Brawner on the first assault because, if there was error, it was neither obvious nor readily apparent and there has been no miscarriage of justice. Furthermore, the government contends that there was no error because the deferred sentencing procedure is an exercise of prosecutorial discretion akin to the pretrial diversion program, and is consistent with the separation of powers doctrine. In his reply brief, Brawner not only reiterates his separation of powers argument, but adds that the termination of the sentencing agreement was analogous to a probation revocation and that he "was denied a hearing before a neutral and unbiased magistrate prior to being deprived

of his liberty in violation of his due process rights ...."

■ We agree with the government that this case is controlled by the plain error standard of review. At no time during the proceedings in the trial court did Brawner raise the arguments that he now makes on appeal. "Under the plain error standard, 'the error must be (1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Coates v. United States*, 705 A.2d 1100, 1104 (D.C.1998) (quoting *Hasty v. United States*, 669 A.2d 127, 134 (D.C.1995) (other citations omitted)). "'[R]eversal under the plain error doctrine is justified only in exceptional circumstances where a miscarriage of justice would otherwise result.'" *Peterson v. United States*, 657 A.2d 756, 762 (D.C.1995) (quoting *Harris v. United States*, 602 A.2d 154, 159 (D.C.1992) (en banc) (other internal quotation and other citations omitted)). We turn now to Brawner's separation of powers and due process arguments.

■ Given the Supreme Court's current interpretation of the separation of powers doctrine, if it was error for the trial court not to have, *sua sponte*, declared that the deferred sentencing agreement usurped the adjudicative power of the court, it certainly was not plain error. The Supreme Court has stated that nothing in "the Constitution requires that the three branches of Government 'operate with absolute independence.'" *Morrison v. Olson*, 487 U.S. 654, 693–94, 108 S.Ct. 2597, 101 L.Ed.2d 569, (1988) (quoting *United States v. Nixon*, 418 U.S. 683, 707, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (other citations omitted)). Moreover, in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the Supreme Court reiterated its adherence to the flexible Madisonian approach to the separation of powers doctrine: "Madison recognized that our constitutional system imposes upon the Branches [of Government] a de-

gree of overlapping responsibility, a duty of interdependence as well as independence ...." *Id.* at 381, 109 S.Ct. 647. Stated another way, the doctrine " 'enjoins upon its branches separateness but interdependence, autonomy but reciprocity.' " *Id.* (quoting *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (concurring opinion)).

In applying the separation of powers doctrine with respect to the judicial branch of government, the Supreme Court examines, *inter alia,* whether "[a] provision of law 'impermissibly threatens the institutional integrity of the Judicial Branch.' " *Mistretta, supra,* 488 U.S. at 383, 109 S.Ct. 647 (quoting *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 851, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)). In the case before us, any threat posed to the institutional integrity of the trial court by the deferred sentencing agreement is not obvious. The court, rather than the prosecutor, accepted Brawner's plea of guilty to the first assault, and the court, not the prosecutor imposed sentence. Moreover, the prosecutor did not adjudicate Brawner guilty of the second assault and impose sentence; that task was left to the court. Instead, under a contractual agreement between the government and Brawner to which the court was not a signator, the government notified the court of its intent to seek immediate sentencing on a charge to which Brawner had already admitted guilt. The court, not the prosecutor, not only determined that sentence could be imposed under the deferred sentencing agreement, but also the nature of the sentence. Consequently, we cannot say that the trial court committed plain error in failing to, *sua sponte,* declare that the agreement violated the constitutional principle of separation of powers by permitting the executive branch of government, through the United States Attorney, to usurp the adjudicative power of the court.

■ The issue regarding whether the deferred sentencing agreement violates Brawner's due process rights arises because one of the conditions of the agreement was that Brawner not "violate any law" or engage in assaultive or threatening behavior against Ms. Payne, and the agreement specified that: "The determination of whether the defendant has violated any of the above conditions rests exclusively with the United States." However, Brawner did not raise the due process argument either in the trial court or in his main appellate brief. Making the dubious assumption, without deciding, that he did not waive this argument,[3] we review it for plain error.

The gravamen of Brawner's due process argument on appeal seems to be that it was arbitrary and capricious for the government to terminate his agreement without a judicial determination that he actually committed the second assault. He contends that the agreement is akin to a probation revocation, as opposed to a pretrial diversion agreement, as the government argues, and that he had a constitutional right not to lose his liberty without a hearing. *See Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ("[A] probationer, like a parolee, is entitled to a preliminary and a final revocation hearing" before loss of liberty.); *Wood v. United States,* 622 A.2d 67, 72 (D.C.1993) ("In our view, it cannot be said that a [person who has been placed in a pretrial diversion program] who is terminated in strict compliance with [a pretrial diversion agreement] suffers a loss of liberty that rises to a constitutional level requiring procedural due process.").[4]

---

3. As we have often reiterated, "an argument first raised in a reply brief comes too late for appellate consideration." *District of Columbia v. Patterson,* 667 A.2d 1338, 1346 n. 18 (D.C.1995). *See also Johnson v. District of Columbia,* 728 A.2d 70, 75 n. 1 (D.C.1999) and cases cited.

4. The pretrial diversion agreement in *Wood, supra,* provided in pertinent part:

    If the United States Attorney determines a) that you made any false statement in your application for admission to diversion or in your eligibility interview, or b) that you

We need not address the issue as to whether a deferred sentencing agreement is more analogous to a probation revocation or a termination of a pretrial diversion agreement, or neither because, under the plain error standard, we are satisfied that the termination of the agreement did not constitute a miscarriage of justice. After executing the deferred sentencing agreement, Brawner readily admitted his guilt with respect to the first assault and never sought to withdraw his guilty plea. Nor did he argue that the court had no authority to sentence him under the agreement. In addition, he did not contend that his

sentence as to the first assault would have been lighter, or not imposed at all, had the agreement not been terminated without a prior judicial determination of his guilt concerning the second assault. Thus, we see no miscarriage of justice.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

violated any condition of the Agreement, the United States Attorney may modify the conditions or terminate you from the [p]ro-

gram and proceed with or reinstate the prosecution.
622 A.2d at 69.