IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TERRANCE WATERS, | § | |
| | § | No. 624, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | ID No. 1309015892 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: December 9, 2015
Decided: January 8, 2016

Before **STRINE**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

## *ORDER*

On this 8th day of January 2016, it appears to the Court that:

(1) Defendant-Below/Appellant Terrance Waters ("Waters") appeals from a Superior Court jury verdict finding him guilty of Carrying a Concealed Deadly Weapon ("CCDW"),[1] Possession of a Firearm By a Person Prohibited ("PFBPP"),[2] Possession of Ammunition By a Person Prohibited ("PABPP"),[3] Possession of a Weapon With an Obliterated Serial Number ("PWOSN"),[4] and Resisting Arrest.[5]

---

[1] 11 *Del. C.* § 1442.
[2] 11 *Del. C.* § 1448.
[3] 11 *Del. C.* § 1448.
[4] 11 *Del. C.* § 1459.
[5] 11 *Del. C.* § 1257.

Waters raises one claim on appeal. He contends that the police did not have a reasonable and articulable suspicion to justify stopping him. We find no merit to Waters' appeal and vote to affirm.

(2) On September 21, 2013, Wilmington Police Detective Matthew Kucharski and Delaware Probation Officer Daniel Collins were on patrol in Wilmington, Delaware.[6] Although not in uniform and driving an unmarked vehicle, both officers were wearing black tactical vests with "Police" embossed on the front.[7] Additionally, the officers were patrolling with the vehicle's windows down.

(3) At approximately 8:15 p.m., the officers observed Waters riding a bicycle on the right side of their vehicle. Waters looked at the officers several times before turning into an alleyway. The officers conducted a u-turn and returned to a point where they could see down the alley. They observed Waters walking in the alley in the opposite direction from where the officers were located. The officers then trailed slowly after Waters down the alley, remaining in the vehicle. After noticing the officers, Waters made a motion toward his waistband on the left side of his body, which the officers described as a "security check," an instinctual gesture that subjects who are armed or otherwise carrying contraband will make upon seeing police. As

---

[6] Detective Kucharski and Officer Collins were working together as members of the Safe Streets Task Force.

[7] Detective Kucharski's vest also had "Police" in white letters on the back while Officer Collins' vest had "Probation" in white letters on the back.

the officers trailed Waters, he made two more "security checks" and turned the left side of his body away from the police vehicle.[8] When Officer Collins asked him his name, Waters responded by walking faster. Believing he was going to flee, Officer Collins instructed Waters not to run. Waters then began running, and the officers followed in pursuit.

(4) Waters eventually ducked behind a parked vehicle where he appeared to throw an object, which "sounded like metal hit the cement" when it landed.[9] Waters then began running again, except now both of his hands moved freely. At this time, the officers stopped and exited their vehicle. Detective Kucharski immediately located a gun on the ground, which he quickly secured. Detective Kucharski then ordered Waters to stop and get on the ground. Waters briefly stopped and looked at the officers but then continued to run. Officer Collins followed Waters on foot while Detective Kucharksi followed in the police vehicle. As he pursued Waters, Officer Collins repeatedly identified himself as a police officer and ordered Waters to stop. Waters eventually complied, and Officer Collins was able to handcuff him.

(5) After further investigation, it was determined that the serial number had been scratched off of the recovered weapon. The officers also noticed that there was

---

[8] This technique is common and referred to as "blading."

[9] Appellant's Opening Br. App. at A33.

3

a scrape on the weapon which, to them, indicated that it had been dropped. Waters was charged with CCDW, PFBPP, PABPP, PWOSN, and Resisting Arrest. Waters stipulated that he was not legally permitted to possess firearms or ammunition. After a jury trial, Waters was found guilty on all charges and sentenced to six years of incarceration, followed by probation. This appeal followed.

(6) At the trial level no motion or objection was made on Waters' behalf. "Failure to make an objection at trial constitutes a waiver of the defendant's right to raise that issue on appeal, unless the error is plain."[10] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[11] "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[12]

(7) "[A] law enforcement officer[] may stop or detain an individual for investigatory purposes . . . if the officer has reasonable articulable suspicion to believe the individual to be detained is committing, has committed, or is about to

---

[10] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[11] *Id.*
[12] *Id.*

4

commit a crime."[13] "If . . . not based upon reasonable and articulable suspicion, anything recovered as a result . . . is inadmissible at trial."[14] "[R]easonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[15] "The high crime nature of the area where the detention occurred [] is a 'relevant contextual consideration' in a reasonable suspicion analysis."[16]

(8) Waters' claim lacks merit. Notwithstanding Waters' failure to raise this issue below, the officers, based on their observations of Waters, had a reasonable and articulable suspicion to justify stopping Waters. First, the officers were on patrol in a high-crime area. Second, Waters, upon noticing the officers, immediately turned his bicycle into an alleyway. When Waters emerged from the alleyway, he no longer had the bicycle and began walking in the opposite direction. Third, Waters continually performed "security checks" to the left side of his waistband while he looked back at the officers. Waters was also turning the left side of his body away from the officers. At trial, the officers testified that these behaviors were indicative

---

[13] *Woody v. State*, 765 A.2d 1257, 1262 (Del. 2001).

[14] *Jones v. State*, 745 A.2d 856, 869 (Del. 1999).

[15] *Id.* at 861.

[16] *Woody*, 765 A.2d at 1265 (internal quotation marks omitted).

5

of an armed individual. Under the totality of the circumstances, the officers had a reasonable and articulable suspicion that Waters was carrying a weapon, or at the very least, contraband. Thus, the trial court did not commit plain error by failing to raise, *sua sponte*, the issue of whether the officers were justified in stopping him.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

_____
Justice

6