**Roberto M. MATOS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 92–CO–509.**

District of Columbia Court of Appeals.

Argued May 20, 1993.
Decided Sept. 2, 1993.

Curtis A. Bradley, Jr., Washington, DC, appointed by the court, for appellant.

Edward F. McCormack, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and Barbara J. Valliere, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge:

This is an appeal from the denial of appellant's motion to vacate his sentence pursuant to D.C.Code § 23–110 (1989). In July 1984 appellant pleaded guilty in the Superior Court before the late Chief Judge Moultrie to charges of second-degree murder while armed[1] and assault with intent to kill while armed.[2] He was sentenced in September 1984 to consecutive prison terms of ten to thirty years on the murder convic-tion and two to twelve years on the assault conviction. Chief Judge Moultrie denied two subsequent motions for reduction of appellant's sentence. Some time thereafter, the Immigration and Naturalization Service (INS) initiated proceedings to deport appellant based on his status as an alien[3] with criminal convictions.

In November 1991 appellant filed a § 23–110 motion, *pro se*, asking that his conviction be set aside on the ground that his counsel at the time of the plea and sentencing had been ineffective, in that he had failed during sentencing to request a judicial recommendation against deportation (JRAD).[4] Because Chief Judge Moultrie, the original sentencing judge, had died, the motion was referred to Judge Suda, who denied it. He found that appellant had previously made several § 23–110 motions in which he had failed to raise this issue and was therefore precluded from raising it now.[5] The judge also concluded that even if appellant's claim were not procedurally barred, it would fail on the merits for three reasons: (1) the failure of trial counsel to request a JRAD did not amount to deficient performance on his part; (2) even if counsel was constitutionally deficient, appellant could not demonstrate that Chief Judge Moultrie would have granted the JRAD, and therefore could not demonstrate that he was prejudiced, a showing required by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); and (3) even if appellant could satisfy the *Strickland* test, the court could not grant the relief requested because (a) the

1. D.C.Code §§ 22–2403, 22–3202 (1989).

2. D.C.Code §§ 22–501, 22–3202 (1989).

3. Appellant is a native and citizen of the Dominican Republic.

4. 8 U.S.C. § 1251(b)(2) (1988) (repealed 1990) provided in pertinent part:
 The provisions ... respecting deportation of an alien convicted of a crime or crimes shall not apply ... if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported....

5. This was appellant's fourth § 23–110 motion, the first three having all been denied. The first two denials were not appealed, but the denial of the third was affirmed by this court in an unpublished memorandum opinion and judgment. *Matos v. United States*, No. 89–1063 (D.C. September 27, 1991). In the third motion, and again on appeal, appellant asserted that he had received ineffective assistance of counsel at his sentencing hearing because he was confused about whether counsel was providing legal representation or was only his interpreter. This court rejected appellant's argument, holding that "the record belies any prejudice flowing to appellant from any possible 'confusion' over the role of such counsel." *Id.*

Immigration Act of 1990[6] repealed the sentencing judge's power to issue a JRAD, and (b) the passage of the thirty-day statutory period in which Chief Judge Moultrie would have had authority to issue the JRAD was jurisdictional, so that the court was without power to issue it now. Because the trial court was correct in all respects, including its decision not to grant a hearing on the motion,[7] we affirm.

## I

The present appeal arises out of appellant's fourth § 23–110 motion, in which he asserted for the first time (more than seven years after his guilty plea and sentencing) that, at the time he entered his plea, his counsel had been ineffective for not requesting a JRAD. Appellant contends that a JRAD issued by the sentencing judge would have prevented his deportation by the INS.

The provision under which appellant is deportable reads in part:

(a) Any alien in the United States (including an alien crewman) shall, upon order of the Attorney General, be deported who—

. . . .

(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more. . . .

8 U.S.C. § 1251(a)(4) (1988). Subsection (b)(2) of the same statute provided, however, that subsection (a)(4) would not apply if the sentencing court, "at the time of first imposing judgment or passing sentence, or within thirty days thereafter," recommended to the Attorney General "that such alien not be deported." Appellant's coun-

sel never requested the court to issue such an order. Section 505(a) of the Immigration Act of 1990 repealed subsection (b)(2). That repeal took effect "immediately" and applies "to convictions entered before, on or after" November 29, 1990. Pub.L. No. 101–649, § 505(b), 104 Stat. 4978, 5050 (1990).

## II

▮▮▮ The trial court was correct in concluding that appellant, at this point, is procedurally barred from asserting his ineffective assistance of counsel claim. This court has recognized that an assertion by a convicted defendant that he received constitutionally ineffective assistance of counsel may be the type of "serious defect which is typically not correctable on direct appeal and is therefore an appropriate ground for a collateral attack." *Ramsey v. United States*, 569 A.2d 142, 146 (D.C.1990). We have also made clear, however, that if such a defendant "has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." *Head v. United States*, 489 A.2d 450, 451 (D.C.1985) (citing *United States v. Frady*, 456 U.S. 152, 167–168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)). When the defendant has already launched several collateral attacks on his conviction, the reasons supporting the application of the cause and prejudice test are even more compelling. *See McCleskey v. Zant*, 499 U.S. 467, ——, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991) ("abuse of writ" doctrine generally bars subsequent consideration of "claims not raised, and thus defaulted, in the first [collateral] proceeding").[8]

**6.** Pub.L. No. 101–649, § 505(a), 104 Stat. 4978, 5050 (1990) (codified at 8 U.S.C. § 1251(a) (Supp. IV, 1992)).

**7.** Claims of ineffective assistance of counsel often involve matters outside the record and thus require a hearing. *See Johnson v. United States*, 585 A.2d 766, 769 (D.C.1991) (citing cases). In some cases, however, including this one, the issues presented can "be resolved on the basis of

the available record; thus, the trial court [is] not required to hold a hearing." *Alpizar v. United States*, 595 A.2d 991, 993 n. 4 (D.C.1991) (citation omitted).

**8.** D.C.Code § 23–110(e) provides:

The court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

■ Appellant's failure to raise in any of his three prior motions the ground on which he now seeks to vacate his sentence justifies the denial of his fourth motion under *Head* and *Frady*. Such a denial is reviewed by this court only for an abuse of discretion, *see Neverdon v. District of Columbia,* 468 A.2d 974, 976 (D.C.1983), and on the record before us we conclude that there was no such abuse. As the trial court noted:

> The defendant here did not show any cause for his failure to raise this claim earlier. Clearly, he had numerous opportunities to present the claim. He does not assert that his appellate counsel was ineffective for not raising this issue before the Court of Appeals. Nor does he cite any exceptional circumstances to justify the delay. Because the defendant offers no explanation for his failure to raise this claim earlier, the Court finds the defendant is now precluded from asserting it.

The record is devoid of any assertions of cause, let alone prejudice, in the § 23–110 motion from which this appeal arises. Before us, in an effort to show "cause," appellant states only that his prior appellate counsel was ineffective for failing to raise the JRAD issue, a claim which even if meritorious is not properly before us.[9] This assertion of cause is not only untimely, in that it was never raised until the instant appeal, but also legally barred by the rule that a claim of ineffective assistance in a prior appeal cannot be raised in a § 23–110 motion. *Streater v. United States,* 429 A.2d 173, 174 (D.C.1980), *cert. denied,* 451 U.S. 902, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981).

### III

■ Even if appellant's present claim were not procedurally barred, we would have to hold that the trial court was correct in ruling that his counsel at sentencing was not ineffective. According to the two-part test established in *Strickland v. Washington, supra,* 466 U.S. at 687, 104 S.Ct. at 2064, to prevail on an ineffectiveness claim, appellant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. We hold that neither prong of the *Strickland* test was satisfied.

In relation to the first prong, appellant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Appellant asserts that counsel's failure to request a JRAD "constitutes deficient performance." Although there are no cases from this court on the issue of whether such failure constitutes deficient performance, other courts have held that "counsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance." *United States v. Campbell,* 778 F.2d 764, 768 (11th Cir.1985); *accord, United States v. Del Rosario,* 284 U.S.App.D.C. 90, 94, 902 F.2d 55, 59 (citing cases from other circuits), *cert. denied,* 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). We have held that the failure of the *trial court* to advise a defendant of the potential collateral consequences of a guilty plea does not require withdrawal of the plea, and have specifically recognized "that the possibility of deportation is one such collateral consequence." *Alpizar v. United States, supra* note 7, 595 A.2d at 994 (citation omitted).[10] It follows that if a defendant's total lack of knowledge regarding the possibility of deportation at the time he enters

---

**9.** If appellant wished to challenge the effectiveness of his prior appellate counsel, he should have filed a motion to recall the mandate in the prior appeal pursuant to Rule 41(c) of this court's rules. *See Watson v. United States,* 536 A.2d 1056, 1059 (D.C.1987) (en banc), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1740, 100 L.Ed.2d 203 (1988). Under Rule 41(c), such a motion must be filed within 180 days from the issuance of the mandate.

**10.** D.C.Code § 16–713(a) (1989) requires the court, upon accepting a guilty plea from someone who is not a United States citizen, to advise the defendant that a conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." In this case, at the time appellant entered his plea, Chief Judge Moultrie gave him such advice in the precise words of the statute.

a guilty plea does not warrant vacation of that plea, then the failure of counsel to advise a defendant about the possibility of a JRAD cannot rise to the level of a constitutional violation. While there is some authority to the contrary, *see Ittah v. United States*, 761 F.Supp. 157, 158 (D.Me.1989); *People v. Barocio*, 216 Cal.App.3d 99, 109, 264 Cal.Rptr. 573, 579 (1989); *People v. Pozo*, 746 P.2d 523, 528–529 (Colo.1987), we are satisfied that the rule adopted in such cases as *Campbell* and *Del Rosario* fits squarely within the framework of our own case law, particularly *Alpizar*.

In any event, on the facts of this case, it is clear that appellant was not prejudiced by any alleged deficiency, and thus his claim fails under the second prong of *Strickland* as well as the first. It is uncontested that appellant was advised by the trial court at the time he entered his plea that the court could have no impact on any decision by the INS with respect to deportation. Despite the possibility, albeit slight and speculative, that the court might have granted the JRAD had it been timely requested, appellant, knowing that the INS might deport him, chose to plead guilty anyway.[11] Appellant does not assert, even now, that his decision to plead guilty would have been affected by his knowledge of the JRAD procedure. We therefore cannot discern what type of prejudice appellant could have suffered.

Furthermore, as the government correctly points out in its brief, we need not even address the constitutional claim of ineffectiveness if it is "clear that the [trial] court, in the exercise of its discretion, would not have granted the application for a JRAD." *United States v. Stavroulakis*, 952 F.2d 686, 697 (2d Cir.), *cert. denied*, ─── U.S. ───, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992). Because this case has been reassigned to Judge Suda, he now stands in the shoes of the late Chief Judge Moultrie, the original sentencing judge. In his order denying appellant's motion, Judge Suda

wrote that "it seems highly unlikely that the Court would have exercised its discretion to issue an order barring the Immigration and Naturalization Service from even considering the defendant's conviction when deciding whether to deport him." Judge Suda continued:

> The government's evidence in this case was that the defendant made several threats against his ex-wife's life which culminated in a court granting her a Civil Protection Order. In violation of that order, the defendant disrupted a baseball game where she, his children, and several others were socializing. He argued with his ex-wife, went to the parking lot, returned with a gun, and shot her cousin in the face, severing her spine and killing her. He then turned the gun on his ex-wife and three others and pulled the trigger. It misfired.... Given these facts, it seems highly unlikely that Chief Judge Moultrie would have exercised his discretion to provide the extraordinary remedy of a binding recommendation against deportation. The defendant simply cannot demonstrate that, if timely requested, in these circumstances, a JRAD would have been granted.

We see no reason to question Judge Suda's analysis of the facts or his conclusion that Chief Judge Moultrie would not have exercised his discretion to issue a JRAD. It is clear to us, moreover, that Judge Suda himself would not have issued a JRAD if he had been the sentencing judge.

## IV

 An additional and independent basis for our affirmance of the denial of appellant's motion is the fact that the very relief which appellant would seek if his conviction were vacated is no longer available. As we have said, the Immigration Act of 1990 repealed the power of sentencing courts to issue JRADs, and that repeal was expressly made retroactive to all "con-

---

11. The plea was the product of what appears to have been a fairly generous plea bargain. Appellant was originally charged in a six-count indictment with several offenses, including first-degree murder while armed. He pleaded guilty

to second-degree murder while armed, a lesser included offense, and to one of the five remaining counts charging assault with intent to kill while armed.

victions entered before, on or after" its effective date. *See United States v. Bodre,* 948 F.2d 28, 35 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1487, 117 L.Ed.2d 628 (1992); *see also Ignacio v. INS,* 955 F.2d 295, 298 (5th Cir.1992) (statutory language demonstrates clear congressional intent that repeal was to apply regardless of the date of conviction). Thus, even if we were inclined (which we are not) to reverse the denial of appellant's § 23–110 motion, the trial court would have no power now to issue a JRAD. *Bodre, supra,* 948 F.2d at 35. Additionally, as the trial court noted, "the cases are ... clear that recommendations issued after the 30–day cut-off period cannot be given *nunc pro tunc* effect." *Velez–Lozano v. INS,* 150 U.S.App.D.C. 214, 217, 463 F.2d 1305, 1308 (1972) (citations omitted). Therefore, granting appellant's motion would be a futile act; the relief he seeks is simply not available.[12]

V

We affirm the trial court's denial, without a hearing, of appellant's fourth § 23–110 motion. The trial court did not abuse its discretion in determining that appellant's motion was procedurally barred, and in any event it was correct in its conclusion that counsel's failure to request a JRAD did not amount to ineffective assistance. Moreover, because Congress has repealed the statute giving sentencing courts the authority to issue JRADs, the relief appellant seeks cannot now be granted.

*Affirmed.*

**SCHWELB, Associate Judge, concurring:**

Counsel for the government advised us at argument that the Immigration and Naturalization Service had deported Matos to the Dominican Republic while this appeal was pending. Under the circumstances, there is not very much that a ruling by this court favorable to Matos could have done for him. One is reminded of President Andrew Jackson's perhaps apocryphal remark: "John Marshall has made his decision; now let him enforce it!"[1]

Despite the deportation, reversal of the trial court's order would have potential collateral consequences for Matos. Accordingly, the case is not moot. On the merits, I agree that the judgment must be affirmed for the reasons stated in Part IV of Judge Terry's opinion; the 1990 legislation now precludes the Superior Court from issuing a JRAD. In addition, as Judge Terry notes, Judge Suda stood in the shoes of the late Chief Judge Moultrie, and we cannot second-guess his decision that no JRAD would have been made. The remaining issues are more difficult,[2] and, since it is not necessary to reach them, I would not do so.

---

**12.** We reject appellant's argument that the Immigration Act of 1990 violates the Ex Post Facto and Due Process Clauses of the Constitution by its retroactive elimination of the trial court's power to issue JRADs and prevent deportation. In decisions by two federal appellate courts addressing this precise issue, it has been held that "Congress's retroactive elimination, in the 1990 Act, of a sentencing court's power to grant relief from the civil penalty of deportation does not increase the criminal penalties and hence does not violate the *Ex Post Facto* Clause." *United States v. Koziel,* 954 F.2d 831, 835 (2d Cir.1992); *accord, United States v. Bodre, supra,* 948 F.2d at 35. As the *Bodre* court said, "it is axiomatic that deportation is not punishment.... Congressional repeal of discretionary power is by no means the equivalent of a change in punishment." *Id.* at 34. Following these decisions, we hold that there has been no constitutional violation.

**1.** Horace Greeley, The American Conflict 1:106 (1864).

**2.** If Matos' former attorneys from the Public Defender Service were not ineffective when they failed to request a JRAD, I have difficulty faulting Matos, who speaks little English, for not having raised the issue more speedily. Moreover, deportation may constitute the severest kind of prejudice for a man whose children live in this country.