**Charles A. THOMAS, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 94–CF–744, 96–CO–1266, 96–CO–1764 and 99–CO–1232.

District of Columbia Court of Appeals.

Argued Dec. 6, 2000.
Decided May 17, 2001.

John T. Moran, Washington, DC, appointed by the court, for appellant.

Chad T. Sarchio, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, RUIZ and REID, Associate Judges.

REID, Associate Judge:

After a jury trial, appellant Charles Thomas was convicted of assault with a dangerous weapon ("ADW"), in violation of D.C.Code § 22–502. On appeal, Thomas raises one direct, and two collateral challenges, to his conviction. We affirm.

## FACTUAL SUMMARY

According to the government's evidence presented at trial, on November 21, 1991, Junious W. Roberts, Jr., now deceased due to an unrelated matter, took a short afternoon break from his job as a janitor with the Walter Reed Army Hospital, in the District of Columbia, during which he consumed approximately forty ounces of beer. As he returned from his break, an individual approached him and hit his lower left leg with what appeared to be a pipe. Mr. Roberts testified that he "got a really good ... look" at his assailant, and that he "remembered his face" from "all up and down Georgia Avenue," in the District.

Detective Loren Cook, an eleven-year veteran of the Metropolitan Police Department ("MPD"), who had interviewed Mr. Roberts while he was recovering from his

injuries at the Washington Hospital Center, testified on cross-examination that "[Mr. Roberts] stated that he had been drinking," but agreed that "[a]side from the fact that he said that, [he] did [not] appear to be under the influence of alcohol." Defense counsel did not pose an objection to this testimony. Although Mr. Roberts could not recall the name of his assailant, he "described the individual as a Black male, approximately twenty-six to thirty-two years of age. Approximately five foot eleven, weighing approximately 195 pounds,[1] dark complected ... wearing [a] black hat, black pants and a grey sweatshirt...." Mr. Roberts also stated that his assailant had "[b]rown" eyes and "black" hair.

Detective Melvin Hemphill, an MPD Officer with over twenty years of experience, testified that on January 3, 1992, as Mr. Roberts examined a photograph array, he "got to the picture of Mr. Thomas" and said, "[t]his is him right here." He then "continued to go through the stack of pictures and came back to [Mr. Thomas's picture] and said '[t]his is him right here.'" Based upon this identification, Detective Hemphill scheduled a line-up of eight individuals, and, on February 21, 1992, Mr. Roberts selected Thomas from the line-up.

Thomas was found guilty on the ADW count, but the jury deadlocked on the mayhem while armed count. Subsequently, he was sentenced to a term of thirty to ninety months in prison. He filed a timely direct appeal.

## ANALYSIS

### *The Direct Appeal*

*The Pre–Trial Claims of Ineffective Assistance of Counsel*

■ Thomas contends that the trial court conducted an inadequate pre-trial

---

1. At trial, the parties stipulated that in November 1991, Mr. Charles Thomas was five feet eleven inches tall and weighed 198 pounds.

hearing concerning his assertions of ineffective assistance of counsel. "[W]hen a criminal defendant complains pretrial about the performance of counsel, the trial judge must make an on-the-record inquiry to elicit whether or not the criteria of professional competence have been met and make findings of fact sufficient to permit appellate review of the ability and preparedness of counsel to render effective assistance." *Gordon v. United States,* 582 A.2d 944, 945 (D.C.1990) (citing *Monroe v. United States,* 389 A.2d 811 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978)). The trial court may, in its discretion, determine " 'the exact nature of the inquiry....' " *Lane v. United States,* 737 A.2d 541, 552 (D.C.1999) (quoting *Nelson v. United States,* 601 A.2d 582, 592 (D.C.1991)); *see also Wingate v. United States,* 669 A.2d 1275, 1279 (D.C.1995).

The record before us shows that the trial court fully explored Thomas's alleged dissatisfaction with his counsel. Prior to trial, the trial judge specifically asked Thomas:

> [I]s there anything about your preparation for trial with [defense counsel] that causes a problem for our proceeding to trial? I mean, are you ready for trial? ... [D]ifferences in personality and style can exist no matter who your lawyer is. [B]ut objectively ... are there any witnesses ... is there any evidence, is there something that is out there that [defense counsel] has not investigated for you?

To this question, Thomas responded:

> Just about everything I think he did, that I think that he did. I can't think of nothing right offhand that he hasn't.... I think all I would like to do is contact some people, but I have no access to that, so.

Defense counsel stated:

> If I might, Your Honor, one of the witnesses that Mr. Thomas is referring to is somebody who we think was an eyewitness to the offense. And my investigator is trying to get him served .... [a]s we speak. My understanding from my investigator is that he had contact with this individual on Tuesday.... And apparently did not serve a subpoena on him for reasons known to him, and what I understand were good reasons, but I have told him to go back again and try to locate this individual and serve him.

After learning that Thomas's counsel essentially had resolved the main issue behind his pre-trial claim, the trial judge then stated, "[s]o I gather all of these matters are being worked on even as we speak?" Defense counsel agreed.

■ In viewing the record, we conclude that the trial judge's specific inquiry was "sufficient to determine the truth and scope of [Thomas's] allegations," *Monroe, supra,* 389 A.2d at 820, and was "designed to elicit whether or not the ... criteria of professional competence ha[d] been met." *Id.* at 821. Defense counsel devoted time during a two-year period to the preparation of Thomas's case and there is no indication, as there was in *McFadden v. United States,* 614 A.2d 11 (D.C.1992), that he had insufficient time to prepare Thomas's case. Thomas's chief complaint was that he wanted to contact certain witnesses. However, the record shows that none of the witnesses would have testified that Thomas did not commit, or could not have committed, the acts with which he was charged. Furthermore, based upon Thomas's responses to the trial judge, the trial court was not required to appoint new counsel because there was clearly no " 'good cause, such as conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which [could] lead ... to an apparently unjust verdict.' "

*Johnson v. United States,* 585 A.2d 766, 771 (D.C.1991) (quoting *McKee v. Harris,* 649 F.2d 927, 931 (2d cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982)). Therefore, we conclude that defense counsel "was prepared 'within the range of competence demanded of attorneys in criminal cases.' " *Nelson, supra,* 601 A.2d at 592 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). In addition, we are satisfied that the trial court did not abuse its discretion in conducting its inquiry into Thomas's complaint, since Thomas was questioned on the record about his complaint, and defense counsel provided details for the trial judge. *Id.*

### Detective Cook's Testimony That Mr. Roberts Did Not Seem To Be Intoxicated

■ Thomas argues that the trial court committed plain error in permitting Detective Cook to testify that Mr. Roberts did not appear to be under the influence of alcohol, because the government did not provide "[a]n adequate foundation for [the Detective's] lay opinion." In *Harris v. District of Columbia,* 601 A.2d 21 (D.C.1991) we held that "lay witness [ ] testi[mony] as to whether a person is under the influence of alcohol" *id.* at 25 n. 5, is admissible as long as a foundation has been established showing that "the witness ha[d] a reasonable degree of experience in observing persons who are under the influence of [alcohol]." *Id.* at 25. However, we further held that in situations "where that matter has not been explored, such a foundation has been assumed to exist." *Id.* at 25 n. 5 (quoting *Durant v. United States,* 551 A.2d 1318, 1324 (D.C.1988)).

■ In the instant case, it is clear that the predicate or foundation for Detective Cook's lay testimony was "not [ ] explored," *id.,* at trial because, as Thomas concedes, defense counsel failed to pose any objection to Detective Cook's testimony concerning his belief that Mr. Roberts was not intoxicated. Under these circumstances, "such a foundation [is] assumed to exist," *id.,* and "alcohol intoxication is considered to be a matter of common knowledge," *Durant, supra,* 551 A.2d at 1324. Moreover, as the trial court concluded, Detective Cook's testimony enabled the jury "[to] determine for itself Mr. Robert's level of impairment." Therefore, we see no error, let alone plain error. *Brawner v. United States,* 745 A.2d 354, 357 (D.C. 2000).

### Defense Counsel's Failure To Object To Evidence Presented At Trial Concerning Thomas's Prior Convictions

■ Thomas maintains that the "trial court committed plain error by permitting the prosecutor to": 1) "admit extrinsic evidence of prior convictions [ ] that [ ] he did not deny"; and 2) "argue in closing and rebuttal that [he] had lied." In addition, he contends that the trial court erred by permitting the government to conduct an improper cross examination of him, with regard to his prior convictions. " 'Under the plain error standard, the error must be (1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.' " *Brawner, supra,* 745 A.2d at 357 (quoting *Coates v. United States,* 705 A.2d 1100, 1104 (D.C.1998)) (other quotations and internal quotation marks omitted). This court will reverse under the plain error standard " 'only in exceptional circumstances where a miscarriage of justice would otherwise result.' " *Id.* (quoting *Peterson v.. United States,* 657 A.2d 756, 762 (D.C.1995)) (other quotations and internal quotation marks omitted). Furthermore, "[q]uestions assuming the existence of a factual predicate must be grounded in a

good faith belief that those facts are susceptible to proof by competent evidence." *Ali v. United States,* 520 A.2d 306, 313 (D.C.1987) (citation omitted).

Even assuming, without deciding, that the trial court committed error, Thomas has failed to show that he suffered "substantial prejudice" as a result of trial court error. *See Bowman v. United States,* 652 A.2d 64, 71–72. Furthermore, "given the strength of the government's case and the weakness of the defense ..., any possible harm ... was 'too trivial too worry about.'" *Washington v. United States,* 760 A.2d 187, 196 (D.C.2000) (quoting *Scott v. United States,* 619 A.2d 917, 929 (D.C. 1993)).

 First, with respect to the use of extrinsic evidence regarding Thomas' prior convictions, for impeachment purposes, the prosecutor based his questions on a Pretrial Services Agency report indicating that Thomas had two prior felony carrying a dangerous weapon ("CDW") convictions. Thus, the factual predicate for the prosecutor's questions was "grounded in a good faith belief that ... [he could establish the prior convictions] ... by competent evidence." *Ali, supra,* 520 A.2d at 313. Furthermore, although the government introduced a certification of Thomas's convictions for carrying a pistol without a license ("CPWL"), unregistered firearm ("UF"), and unlawful possession of ammunition ("UA") during its rebuttal, we cannot say that the trial court plainly erred in admitting the certification, given the close relationship between CDW and CPWL. *See Cooke v. United States,* 107 U.S.App. D.C. 223, 224–25, 275 F.2d 887, 888–89 (1960); *Lucas v. United States,* 256 A.2d 574, 575 (D.C.1969).

 Second, the jury was presented with significant damaging testimony from Thomas, himself, during trial. Thomas testified that he was a crack cocaine abuser and that he had been previously convicted of attempted possession of PCP, possession with intent to distribute marijuana, and, on two occasions, possession of marijuana. Nonetheless, after hearing the government's assertions that Thomas "lied" during trial, the jury deadlocked on the mayhem while armed count, and convicted Thomas on the lesser included offense of ADW. Thus, even assuming, without deciding, that the government's closing and rebuttal arguments, as well as the cross-examination of Thomas, as to his prior convictions, were improper, they were "harmless beyond a reasonable doubt because there is no reasonable possibility that [they] contributed to [Thomas's] convictions." *Brewer v. United States,* 559 A.2d 317, 323 (D.C.1989) (citing *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

In short, we conclude that the trial court's failure to intervene, *sua sponte,* to correct the government's alleged errors, did not result in substantial prejudice to Thomas, requiring a reversal. *See Morrison v. United States,* 547 A.2d 996, 1000 (D.C.1988).

### The Collateral Attacks

On March 18, 1996, Thomas filed a D.C.Code § 23–110 motion to vacate his sentence. He maintained that he was denied the effective assistance of trial counsel because his counsel: (1) failed to introduce a toxicology report into evidence or call an expert witness on intoxication; (2) failed to give an opening statement; and (3) failed to elicit damaging hearsay evidence from Mr. Roberts on cross-examination. Based on the evidence presented at trial, the trial court denied the motion. On August 26, 1996, Thomas filed a motion for reconsideration, which was denied on October 11, 1996. Thomas noticed a timely appeal.

Thomas lodged a second § 23–110 motion on March 19, 1999, alleging trial counsel failed to: (1) hire an expert to interpret blood-alcohol concentrations; (2) prepare adequately for trial; (3) impeach witnesses with inconsistent statements; (4) object to hearsay; and (5) object to the use of his CPWL conviction as a CDW conviction. The trial court denied this motion on August 12, 1999, essentially because "[n]one of the allegedly new issues . . . warrant[ed] consideration . . . ." and Thomas failed to show cause for the failure to raise the new issues in his first § 23–110 motion or "a fundamental miscarriage of justice."

▮▮▮▮▮ Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we see no merit to Thomas's § 23–110 claims, *see also Brown v. United States*, 726 A.2d 149 (D.C.1999); nor are we persuaded by his assertion that the trial court "improperly denied without a hearing [his] second post-conviction motion." [2] *Strickland, supra*, requires Thomas to "show that counsel's performance was deficient . . . , [and] that the deficient performance prejudiced the defense ." *Id.* at 687. Under the second *Strickland* prong, Thomas cannot show prejudice with regard to his first § 23–110 motion. Mr. Roberts described and specifically identified Thomas as his attacker on three occasions, and testified that he was certain Thomas was his attacker. Mr. Roberts had an opportunity to see Thomas during the assault, and recognized him as a member of the local community surrounding Georgia Avenue. He stated that he would "never forget" Thomas's face. In addition, Thomas was unable to present any witnesses to corroborate his alibi that he was working at a beauty parlor at the time of Mr. Roberts' assault. Therefore, the trial court did not abuse its discretion in denying Thomas's first § 23–110 motion.

▮▮▮▮ With regard to Thomas's second § 23–110 motion, we have said that when a defendant " 'has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure.' " *Matos v. United States*, 631 A.2d 28, 30 (D.C.1993) (quoting *Head v. United States*, 489 A.2d 450, 451 (D.C.1985) (citation omitted)). [3] Indeed, the "abuse of writ" doctrine precludes consideration of "claims not raised, and thus defaulted, in the first [collateral] proceeding," *McCleskey v. Zant*, 499 U.S. 467, 490, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); and § 23–110(e) states that, "the court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

▮▮▮ Thomas provided no "affidavit or other credible proffer" to support his allegations of ineffective assistance of counsel, and thus, was not entitled to a hearing on his second collateral attack motion. *Ready v. United States*, 620 A.2d 233, 235 (D.C.1993); *see also Lane, supra*, 737 A.2d at 552. Furthermore, we agree with the

---

**2.** With regard to Thomas's appeal of the denial of his motion for reconsideration of his first § 23–110 motion, we note that: "The denial of a [m]otion for [r]econsideration, by itself, is not an appealable order." *Perry v. Sera*, 623 A.2d 1210, 1221 n. 10 (D.C.1993) (other citations omitted).

**3.** There was a three-year delay between Thomas's first and second § 23–110 motions. Although he argued, for the first time, that defense counsel was ineffective because he failed to use Mr. Robert's grand jury testimony to impeach him, and raised other new particulars, Thomas failed to meet the requirement of *Matos, supra*, that he show "both cause for his failure to [include these matters in his first § 23–110 motion,] and prejudice as a result of his failure." *Id.* at 30. (quotation and citation omitted).

trial court's conclusion that he has not sustained his burden to show cause and prejudice.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

RUIZ, Associate Judge, concurring in part and dissenting in part.

I concur in affirming the trial court's denial of the first 23–110 motion without a hearing, but not, as the majority does, based on lack of *Strickland* prejudice. With respect to the second 23–110 motion, which was filed during the pendency of the direct appeal, I disagree that the trial court need not have considered it on the merits on the ground that it was a "second or successive motion for similar relief." D.C.Code § 23–110(e) (1996 Repl.) (permitting trial court not to entertain such a motion). Therefore, I would remand for the trial court's consideration of the merits of the second 23–110 motion.

### First 23–110 motion

In his first 23–110 motion, Thomas claimed that his trial counsel was ineffective because he failed to obtain and present a toxicology report on the percentage of alcohol in the complainant's blood and to present a toxicologist who would explain to the jury how such a level of blood alcohol would be likely to affect the complainant's ability to perceive accurately and to recall those perceptions. The majority disposes of the claim of ineffectiveness on the ground that there was no *Strickland* prejudice because of the purported strength of the complainant's identification of Thomas as his attacker.

Unlike the majority, I do not think that the government's case, nor the identification, was particularly strong. The only issue in contention before the jury was whether Thomas was the person who struck the complainant, Roberts, with a pipe for no apparent reason. The only evidence to that effect was provided by Roberts, who identified Thomas from a photo array and then picked him from a line-up several weeks after the incident. Roberts did not know Thomas personally, nor his name, but testified that he "remembered his face" from seeing him "all up and down Georgia Avenue." There was serious doubt, however, about Roberts' ability to accurately perceive, and later identify, Thomas. First, Roberts testified that, at the time of the incident, he was operating on 1 ½ to 2 hours' sleep after a night of drinking twenty-four beers. In addition to being inebriated when he was attacked, an equally serious doubt about Roberts's credibility was raised by the fact that, right after the attack, he had identified by name a co-worker as involved in his attack—a fact that the majority fails to mention. This statement was made to the police officer who visited Roberts at the Washington Hospital Center where he was being treated for the injuries from the attack. Roberts then changed his mind and identified Thomas several weeks later as his assailant.[1] The weakness of Roberts's identification, when coupled with the randomness of the attack, and no apparent motive on the part of Thomas to attack Roberts, whom Thomas did not know, hardly makes for an overwhelming government case.

---

1. Roberts initially told police that Mr. Carter, a co-worker and associate with whom Roberts had a physical altercation approximately one week prior to the assault, had accompanied his assailant and was involved in the attack. Roberts admitted that he lied about Carter's involvement "because [he] wanted to get" Carter for having assaulted him a week earlier.

This weakness must be viewed in the context of Thomas's argument that, had his trial counsel attacked Roberts's credibility by presenting to the jury expert testimony on how impaired his perceptual abilities would have been from his heavy drinking, he would not have testified in order to present an alibi. As a result of taking the stand, Thomas was impeached with prior convictions including possession of an unregistered firearm, possession of unregistered ammunition, and carrying a pistol without a license (CPWL).[2] I would therefore not dispose of the first 23–110 motion on a lack of *Strickland* prejudice grounded on the strength of the government's case. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (defining prejudice as reasonable probability, that, but for counsel's unreasonable performance, outcome of trial would be different, or confidence in verdict is lacking).[3]

Instead, I would affirm the trial court's denial of the first 23–110 motion because, as the trial court determined, the allegedly deficient performance of counsel, the failure to introduce a toxicology report and to call a toxicology expert, was not so unreasonable as to fall below the range of acceptable performance by counsel in a case where Roberts had testified to drinking a case of beer and having almost no sleep the night before. As jurors are presumed to know the effects of such heavy drinking, *see Harris v. District of Columbia*, 601 A.2d 21 (D.C.1991), counsel reasonably could decide that they were able to evaluate the accuracy of a drunk Roberts's identification of Thomas without expert assistance.

**Second 23–110 motion**

The trial court determined that it had no obligation to consider the second 23–110 motion because Thomas had not shown "cause and prejudice" for his failure to raise those claims of ineffective assistance of counsel during his first collateral attack *See Head v. United States*, 489 A.2d 450, 451 (D.C.1985) ("Where a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure."). The majority affirms on the same basis, relying on *Matos v. United States*, 631 A.2d 28, 30 (D.C.1993). I disagree that *Matos* answers the question presented by this appeal because *Matos* concerned a situation where appellant "failed to raise an available challenge to his conviction on direct appeal," yet "launched several similar collateral attacks on his conviction." *Id.* Here, on the other hand, Thomas's two 23–110 motions were filed while the direct appeal was pending and had been stayed, pursuant to our direction in *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987) (indicating that an appellant who is aware of a basis for alleging ineffective assistance of trial counsel should file a § 23–110 motion during the pendency of a

---

**2.** When cross-examining appellant, the prosecutor mistakenly characterized appellant's CPWL conviction as a conviction for carrying a dangerous weapon (CDW) and then argued in closing argument that appellant lied when he denied the CDW conviction. Appellant argued in his second 23–110 motion that trial counsel was ineffective for not objecting to the prosecutor's cross-examination and closing argument at trial.

**3.** For the same reason, I would not conclude that the claim that the trial court erred in failing *sua sponte* to prevent or correct the prosecutor's cross-examination and closing argument made on direct appeal was harmless. See *ante* at 8. As the majority correctly points out at the beginning of its analysis, those claims were not made to the trial court and our review is limited to plain error. See *ante* at 7. I conclude there is no plain error.

direct appeal). Thomas's second 23–110 motion was filed after the trial court had denied his first motion alleging ineffectiveness (which concerned different claims of deficient performance) but before any of the claims concerning his trial and collateral attacks had been briefed, argued or addressed by this court. Whether such a claim is procedurally defaulted is a question of first impression. It is to that issue that I turn my analysis.

Let me state at the outset that I would have deferred our decision in this case until the en banc court considers the statutory and constitutional obligations of appellate counsel and the continued validity of the *Shepard* rule in *Williams v. United States*, 760 A.2d 205 (D.C.2000), *reh'g granted*, 770 A.2d 560 (D.C.2001). In that case, the en banc court is faced with the question whether appellate counsel's failure to file a notice of appeal from the denial of a 23–110 motion filed contemporaneously with direct appeal prevents appellate review of the claim of ineffectiveness of trial counsel. The issue in this case, though not identical, also presents a question about the performance of appellate counsel who procedurally defaults his client's claim of ineffectiveness of trial counsel. In *Williams*, the defendant argues that the trial court's denial of his claim on the merits for ineffective assistance of trial counsel is entitled to appellate review, whereas here, the defendant's claim of ineffectiveness of trial counsel presented in his second 23–110 motion has not been reviewed by any court, at any level. The full court's consideration of the issues in *Williams* would undoubtedly be helpful to our consideration of this case.[4]

In *Shepard*, we established that appellants who are "aware of a basis for alleging ineffective assistance of trial counsel" should file 23–110 motions alleging such ineffectiveness during the pendency of the direct appeal as a way of "making a record regarding matters relevant to the ineffectiveness claim that do not appear in the record of the case on direct appeal." 533 A.2d at 1280. To provide some "teeth" to that requirement, we also announced the prospective application of a new rule that if an appellant does not do so, "that procedural default will be a barrier to *this court's* consideration of appellant's claim." *Id.* at 1280 (emphasis added).[5] We did not address whether consideration by the trial court would be similarly precluded, but *Shepard's* focus on the pendency of direct appeal suggests that 23–110 motions filed during the pendency of direct appeal comply with *Shepard* requirements. Both the language of *Shepard*, as well as its purpose of developing a record on the ineffectiveness claims to supplement the record on

---

4. The en banc court has requested that the parties in *Williams* address, *inter alia*, the following issues:

1. Does an attorney appointed to represent a defendant on appeal under the Criminal Justice Act, and who files a contemporaneous motion to vacate sentence under D.C.Code Section 23–110 in accordance with *Shepard v. United States*, 533 A.2d 1278 (D.C.1987), have a statutory duty to take necessary steps to preserve the denial of that motion for appellate review?
2. If so, does the breach of that duty violate due process, *see Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *see also, e.g., Logan v. Zimmer-*

*man Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), which may constitute "cause" and therefore excuse the failure to note an earlier appeal in a subsequent collateral attack proceeding?
3. If the answer to question 1 is "no," does the due process right to effective assistance of counsel on direct appeal, *see Evitts, supra*, include the obligation of counsel to preserve for appeal the denial of a contemporaneous Section 23–110 motion?
*Williams*, 770 A.2d 560.

5. The barrier is not insurmountable, however, if the appellant can show "cause and prejudice." *Id.* at 1282.

direct appeal, argue against the majority's position that Thomas's second 23–110 claim has been procedurally defaulted.

The trial court and the majority rely on D.C.Code § 23–110(e), which provides that the trial court "shall not be required to entertain a second or successive motion for similar relief." Thomas's second 23–110 motion, which raised claims of ineffectiveness different than those raised in his first motion, was not a "successive" motion. *See Junior v. United States*, 634 A.2d 411, 417 n. 15 (D.C.1993) (citing *McCleskey v. Zant*, 499 U.S. 467, 487, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), for the proposition that a "successive motion is identical to the first motion"); *see also Hurt v. St. Elizabeths Hospital*, 366 A.2d 780, 781 (D.C. 1976) (noting that allegations that "merely repeat the previously rejected contentions ... need not have been considered by the trial judge").

The question, therefore, is whether Thomas's second 23–110 motion need not be entertained as a "second ... motion for similar relief." D.C.Code § 23–110(e). Although we have not previously expressly interpreted the meaning of a "second" motion for purposes of 23–110(e), we have suggested that it is one that would constitute an "abuse of the writ." *See Junior*, 634 A.2d at 417 n. 15 (indicating that a

second motion that alleges a new ground might be considered an abuse of writ); *cf. McCleskey*, 499 U.S. at 487–88, 111 S.Ct. 1454 (importing court-made "abuse of the writ" jurisprudence in defining when a second or subsequent habeas petition by a state prisoner under 28 U.S.C. § 2244(b) (1994) "need not be entertained by" a federal court).[6] In interpreting the statutory reference to "second" motions we should do so with the interests in finality that animate "abuse of the writ" jurisprudence. 499 U.S. at 491, 111 S.Ct. 1454. The Supreme Court has identified those interests as preservation of the deterrent effect of convictions and protection of the government's interest in prosecuting criminal behavior by avoiding the " 'erosion of memory' and 'dispersion of witnesses' " that can occur with delayed retrials. *Id.* (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 453, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)).[7] Efficiency is another interest protected by the doctrine of finality, for "collateral litigation places a heavy burden on scarce judicial resources, and threatens the capacity of the system to resolve primary disputes." *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 260, 93 S.Ct. 2041 (1973) (Powell, J., concurring)).[8]

To balance those concerns against a prisoner's interest in judicial review of

**6.** The version of 28 U.S.C. § 2244 interpreted in *McCleskey* stated that "a subsequent application for a writ of habeas corpus ... need not be entertained by a court of the United States ... unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ." 28 U.S.C. § 2244(b) (1994). In language similar to D.C.Code § 23–110(e), the habeas statute applicable to persons in federal custody, 28 U.S.C. § 2255(b), provided prior to a 1996 amendment that: "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief." 28 U.S.C. § 2255 (1994). The procedure in federal court to address second or successive motions was amended in 1996 to require a certifica-

tion by the appeals court in accordance with specified criteria. *See* 28 U.S.C. §§ 2244, 2255 (2000 Supp.).

**7.** In the federal habeas context, "the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights" are also frustrated. *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 487, 106 S.Ct. 2639 (1986)). This concern does not apply in the context of our review of 23–110 motions.

**8.** In this case, only the interest in efficiency is implicated by the unexplained three-year lapse in filing the second 23–110 motion, as consideration of that motion would require the trial court to address ineffectiveness of

meritorious claims, the Court settled on "cause and prejudice," and defined "cause" as requiring a showing that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in the first petition. *Id.* at 493, 111 S.Ct. 1454 (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. 2639). In addition, the Court specified, "constitutionally 'ineffective assistance of counsel ... is cause'" for this purpose. *Id.* at 494, 111 S.Ct. 1454 (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. 2639). Once "cause" is established, the petitioner must show "actual prejudice" resulting from the claimed errors.[9]

If we follow the Court's "cause and prejudice" analysis in the context of this appeal, it becomes immediately apparent that a meritorious claim of ineffective assistance of trial counsel will suffice to establish cause and prejudice if there was a constitutional right to effective assistance of appellate counsel. Although there is no constitutional right to counsel on collateral attack, *see Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Brown v. United States,* 656 A.2d 1133, 1136 (D.C.1995), there is a constitutional right to counsel on direct appeal, *see Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In discussing the due process right to counsel under the Fourteenth Amendment, the Court distinguishes between appeals as of right and discretionary appeals. *See Ross v. Moffitt,* 417 U.S. 600, 610, 612, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (holding that neither the Due Process Clause nor the Fourteenth Amendment's equal protection guarantee requires the appointment of counsel for discretionary appeals where defendant has already had one appeal as of right). It is at this juncture that the filing of the second 23–110 motion during the pendency of direct appeal becomes significant. Thomas's direct appeal to this court is a matter of right, *see* D.C.Code § 11–721 (1995 Repl.), and so he has a constitutional right to counsel for that appeal. *See Evitts,* 469 U.S. at 396, 105 S.Ct. 830. As we have said, the purpose of filing 23–110 motions claiming ineffective assistance of trial counsel during the pendency of direct appeal is to develop a record to supplement the direct appeal, and to consolidate our consideration of all claims into one appeal. *See Shepard,* 533 A.2d at 1280. Thus, the constitutional right to counsel is

trial counsel at two different times. There are no witnesses whose memory was necessary to present or evaluate the claim that counsel was ineffective in failing to object to the prosecutor's cross-examination and closing statement. Further, because the direct appeal was pending, the second 23–110 motion did not delay the deterrent value of a final conviction, nor put off the time when the government would have to retry the defendant in the event of reversal on appeal.

9. Of course, even if cause and prejudice are not established, a habeas petition must be entertained if the judge considers that the "ends of justice" require it. *Id.* at 495, 111 S.Ct. 1454. "The miscarriage of justice exception to cause serves as 'an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty,' guaranteeing that the ends of justice will be

served in full." *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 491, n. 31, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).) Because our 23–110 procedures are considered the equivalent of federal collateral attack review, *see* D.C.Code § 23–110(g) (1996 Repl.) (exempting D.C. prisoner claims from federal habeas review unless D.C. procedures are "inadequate or ineffective to test the legality of his detention"); *Garris v. Lindsay,* 254 U.S.App. D.C. 13, 17, 794 F.2d 722, 726 (1986), the restriction in 23–110(e) with respect to "second or successive" motions also should be subject, as are the federal procedures, to an "ends of justice" exception. *See Diamen v. United States,* 725 A.2d 501, 525 (1999) (Ruiz, J., dissenting) (noting that habeas corpus in federal courts is an equitable inquiry that provides a remedy when required by the "ends of justice").

implicated in the presentation of 23–110 motions which are subsidiary to and supplement the direct appeal. If the failure to include a meritorious claim of ineffective assistance of trial counsel as part of the first 23–110 motion means that the trial court never considers it on the merits under D.C.Code § 23–110(e), and, consequently, is not part of the record on direct appeal, appellate counsel's failure constitutes "cause" which excuses the procedural default.[10] *Cf. Coleman v. Thompson,* 501 U.S. 722, 756–757, 111 S.Ct. 2546, 2568–2569, 115 L.Ed.2d 640, 672–673 (1991) (holding that appellate counsel's deficient performance that procedurally defaulted the federal habeas claim by failing to file a timely appeal from state post-conviction proceeding does not constitute "cause" where defendant has already had his "one and only appeal," which involved a two-day evidentiary hearing in a state court considering ineffectiveness of trial counsel).

Under these circumstances, where a 23–110 motion making a constitutional claim

of ineffective assistance of trial counsel is filed during the pendency of the direct appeal, I would conclude that because a merits review may establish "cause," the motion should not have been dismissed as a "second" motion for purposes of 23–110(e). Thus, I would remand for the trial court's consideration of the merits.[11]

---

**10.** I am aware that we have said that "[t]he pendency of a direct appeal does not give appellant any greater right to appointment of counsel for a § 23–110 motion than he would otherwise have." *Kyle v. United States,* 759 A.2d 192, 201 (D.C.2000) (citing *Doe v. United States,* 583 A.2d 670, 675 (D.C.1990)). Those cases dealt with the requirement that there be a threshold showing on the merits before appointment of counsel is required for a 23–110 motion; specifically, counsel is required where a hearing must be held. *See Doe,* 583 A.2d at 672. Although the issue of entitlement to counsel is certainly related to this appeal and to the en banc court's consideration of *Williams, see supra* note 4, those cases assume trial court consideration of the merits of a 23–110 motion before deciding whether a hearing and appointment of counsel are called for; and do not deal with the specific issue presented here, where a 23–110 motion presented to the trial court during the pendency of direct appeal receives *no* consideration by the trial court. Similarly, in *Lee v. United States,* 597 A.2d 1333 (D.C.1991), in

which the court did not focus on the significance that the purpose of filing a 23–110 motion contemporaneously with a direct appeal is to supplement that appeal, the trial court had denied the motion on the merits, not dismissed it under 23–110(e). *See id.* at 1334.

**11.** Appellant argued in his second 23–110 motion that trial counsel was ineffective for failing to object to the prosecutor's mis-characterizing appellant's CPWL conviction and then unfairly labeling appellant as an "out-and-out li[ar]," who "would do almost anything to avoid conviction." See *supra* note 2. While I do not decide whether the claim of ineffective assistance of trial counsel, in the final analysis, would be meritorious, given the earlier discussion about the weakness of the government's case, I cannot say that the trial court could *not* have found the claim to be meritorious. It is for the trial judge, who observed the trial, to evaluate the impact of counsel's claimed deficient performance on the jury in the first instance.