

**In re B.L.; T.L., Appellant.**

**No. 01–FS–973.**

District of Columbia Court of Appeals.

Argued Feb. 5, 2003.

Decided Feb. 12, 2003.*

Daniel Anthony Guerriero, appointed by the court, for appellant.

Sheila Kaplan, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for the District of Columbia.

Ashok K. Batra, guardian ad litem for B.L., filed a statement supporting the District's brief.

Before STEADMAN and REID, Associate Judges, and KING, Senior Judge.

PER CURIAM:

Appellant T.L., the mother of B.L., challenges the trial court's ruling that her child is a "neglected child" within the meaning of D.C.Code § 16–2301(9)(C) (2001). We affirm.

**FACTUAL SUMMARY**

Evidence presented at the neglect trial revealed that on October 20, 2000, T.L. went to the Child and Family Services Agency ("CFSA") to visit her twenty-month-old child, H.L.[1] T.L. was accompanied by her thirteen-year-old son, B.L.[2]

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on February 12, 2003. It is now being published by direction of the court.

1. H.L. had previously been adjudicated as a neglected child and removed from T.L.'s parental care.

2. B.L. was born on January 27, 1987. His father is deceased. Prior to court proceedings, on September 1, 2000, T.L. made a contractual agreement with L.C., B.L.'s godfather. L.C. "agreed to take care of B.[L.] and to provide whatever assistance [he] could until [T.L.] found a suitable place and suitable arrangements to assure his continued success-

Ritu Atwal, a CFSA supervisory social worker, testified that "there was a very, very, very strong" smell of alcohol coming from T.L.'s breath. CFSA had a policy against taking pictures, but T.L. had a camera with her and took pictures nonetheless. After Ms. Atwal asked her to refrain from taking pictures, T.L. became "verbally aggressive" and flung toys in the visitation area. Security officers later escorted T.L. out of the building. T.L. attempted to "re-enter on three separate occasions that day."

T.L. appeared under the influence of alcohol on several other occasions. The next day, on October 21, 2000, Magarita Correa, a CFSA social worker, encountered T.L. outside a courtroom after the initial court hearing.[3] T.L.'s "speech was slurred[.]" Ms. Correa "smelled alcohol on her." Ms. Correa unsuccessfully attempted to place T.L. with alcohol services, specifically a five-day detox program, and anger management classes. T.L. maintained that she was already participating in an alcohol program, but Ms. Correa was unable to confirm her assertion.

T.L.'s mother, B.L., testified that she often called the police because of T.L.'s public intoxication. She was arrested once in the fall of 1998 and in June of 2000, appeared at a church service drunk and filthy. In April of 2001, while T.L. appeared for a CFSA visitation with her son, H.L., she cursed in front of her mother and B.L. She testified that on their way out B.L. "cried. He was just wiping tears. He didn't say a thing."

T.L. and B.L. resided with T.L.'s former boyfriend, W.Y., for a period of time. W.Y. observed T.L. "drinking alcohol" on several occasions. T.L. was verbally abusive with B.L., calling him names such as "stupid" and "dumb." A couple of times, after B.L. attempted to pour out his mother's beer, W.Y. had to "pull them apart" from "tussling." The trial court determined that "[T.L.] would fight with [B.L.] after he would confront her about her drinking."

The trial court credited the testimony of four witnesses who explained that T.L.'s parental abilities were impeded by extensive alcohol abuse. After a two-day trial the court reasoned in pertinent part:

> [The] mother suffers from mental incapacity caused by alcohol abuse.... It is telling that [T.L.] testified that she has no such problem—an account that the court does not credit. *In re A.B.*, 486 A.2d 1167 (D.C.1984) (mother's nonrecognition of mental illness was a relevant factor for the court's consideration).
>
> The government has also established by a preponderance of the evidence that the mother's mental incapacity, caused by her alcohol, rendered her "unable to discharge [ ] her responsibilities to and for the child." This required nexus is illustrated through the wide range of testimony regarding the effect of the mother's alcohol abuse on [B.L.].
>
> [T.L.'s] parenting was undercut and compromised by her drinking problem. The 13–year–old [child] suffered emotionally as a result of his mother's alcohol abuse.

ful schooling and care." B.L. lived with L.C., and T.L. stayed there "intermittently." At the neglect hearing L.C. testified that he had "been an alcoholic for 23 years[,]" but that he had sought help for his condition. B.L. stayed with him until the boy's grandmother intervened "through [the] Court."

**3.** A neglect petition was filed on October 21, 2000, claiming that B.L. was neglected within the meaning of D.C.Code § 16–2301(9)(C) (2001).

## ANALYSIS

On appeal, T.L. claims the trial court erred because no expert testimony or other evidence sufficiently demonstrated that her mental incapacity affected her ability to provide parental care for B.L.; and that, by a preponderance of the evidence, B.L. was not a neglected child within the meaning of D.C.Code § 16–2301(9)(C) (2001).

"In evaluating appellant['s] claim of evidentiary insufficiency, we must consider the evidence in the light most favorable to the government, giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence and draw reasonable inferences." *In re T.M.*, 577 A.2d 1149, 1151 (D.C.1990). Preponderance of the evidence has been defined as " 'proof which leads the [court] to find that the existence of the contested fact is more plausible than its non-existence.' " *In re D.I.S.*, 494 A.2d 1316, 1326 (D.C.1985) (quoting MCCORMICK ON EVIDENCE § 339 (E. Cleary 3d ed.1984)); *see* D.C.Code § 16–2317(b)(2). Reversal is warranted if the trial court's decision was "plainly wrong or without evidence to support it." *In re S.G.*, 581 A.2d 771, 774 (D.C.1990); *see* D.C.Code § 17–305(a).

In this case the trial court determined B.L. was a neglected child as defined in D.C.Code § 16–2301(9)(C), which reads: "The term 'neglected child' means a child: (C) whose parent ... is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity ...." We have said that "mere existence of parent's alcoholism or substance abuse does not constitute grounds for a [neglect proceeding] unless the parent demonstrates an unwillingness or inability to properly care for the child." *In re M.D.*, 758 A.2d 27, 32 n. 9 (D.C.2000) (internal citation and quotation marks omitted); *In re E.H.*, 718 A.2d 162, 169 (D.C.1998).

"Expert testimony will be required where the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *District of Columbia v. Harris*, 770 A.2d 82, 90 (D.C. 2001) (internal citations and quotation marks omitted). This case is distinguishable from *M.D.* because unlike a medical condition such as eczema, "alcohol intoxication is considered to be a matter of common knowledge." *Thomas v. United States*, 772 A.2d 818, 822 (D.C.2001) (quoting *Durant v. United States*, 551 A.2d 1318, 1324 (D.C.1988)).

The trial judge did not need an expert to help show "a nexus between [T.L.'s alcoholism] and the failure to provide proper parental care." *In re E.H., supra*, 718 A.2d at 168. The trial court credited the testimony of four witnesses and made factual findings demonstrating that on several occasions T.L. had a drinking problem, which interfered with her ability to care for B.L. T.L. was verbally abusive with B.L., calling him names such as "stupid" and "dumb." T.L. would be upset every time B.L. would confront her about her drinking problem. Sometimes after B.L. attempted to pour out his mother's beer, W.Y. had to separate them from "tussling." As a result, B.L. was embarrassed, frightened, withdrawn, and often retreated to his room for long periods of time.

Based upon our review of the record on appeal, we conclude that the evidence was sufficient to support the trial court's findings and conclusion. Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.